**CSX TRANSPORTATION, INC.,**
**Plaintiff–Appellee,**

v.

**CITY OF PLYMOUTH, MICHIGAN,**
**Defendant–Appellant.**

No. 94–1857.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1996.

Decided June 25, 1996.

Wandaleen Poynter, CSX Transportation, Inc., Law Department, Jacksonville, FL,

Jack O. Kalmink, Cross & Wrock, Detroit, MI, George F. Pappas (argued and briefed), Vicki Margolis, Venable, Baejter & Howard, Baltimore, MD, for Plaintiff–Appellee.

John M. Donohue (argued and briefed), Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, MI, Ronald W. Lowe, Lowe, Lewandowski, Plymouth, MI, for Defendant–Appellant.

Janice C. Schultz (briefed), Washington, D.C., for Amicus Curiae Association of American R.R.

Before: KEITH, JONES, and SILER, Circuit Judges.

SILER, Circuit Judge.

Defendant, Plymouth, Michigan ("Plymouth"), appeals summary judgment granted to the plaintiff, CSX Transportation, Inc. ("CSXT"). CSXT challenges a Plymouth ordinance as being preempted by the Federal Railway Safety Act ("FRSA"), 49 U.S.C. § 20101 et seq. We hold that the ordinance is preempted and affirm the district court.

## I.

CSXT operates interstate trains that cross Plymouth's streets. Plymouth Statute Chapter 129, Section 10.51 ("ordinance"), prohibits trains from obstructing "free passage of any street ... for longer than five (5) minutes" and requires five minutes between obstructions. Plymouth enforces the ordinance by regularly assessing fines against CSXT for violations of this ordinance.

CSXT seeks a declaration that this ordinance is unconstitutional as applied and a permanent injunction against its enforcement. CSXT claims that this ordinance: (1) is expressly preempted by the FRSA, (2) places an unconstitutional burden on interstate commerce in violation of the Commerce Clause, and (3) discriminatorily taxes CSXT in violation of the Railroad Revitalization and Regulatory Reform Act ("4–R Act"), 42 U.S.C. § 801 et seq. The district court held that the Plymouth ordinance was expressly preempted by the FRSA preemption clause, 49 U.S.C. § 20106. Plymouth claims that this ordinance is not preempted because it regulates a field not within the scope of the FRSA.

## II.

This court reviews an order granting summary judgment de novo. City Mgmt. Corp. v. United States Chemical Co., 43 F.3d 244, 250 (6th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir.1994).

## III.

Under the Supremacy Clause, "the Laws of the United States ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The Supreme Court summarized ways in which federal law preempts other legislation under this authority:

> The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (citations omitted). "The critical question in any pre-emption analysis is always whether Congress intended that

federal regulation supersede state law." *Id.* at 369, 106 S.Ct. at 1899.

Congress expressly intended that the FRSA preempt all railroad safety legislation except *state law* governing an area in which the Secretary of Transportation has not issued a regulation or order and *state law* more strict than federal regulations when necessary to address local problems.[1] 49 U.S.C. § 20106; *see also Norfolk & Western Ry. v. Public Utils. Comm'n of Ohio,* 926 F.2d 567, 570 (6th Cir.1991) (explaining the two exceptions).

■ These exceptions apply only to a "*State* ... law, regulation, or order ..." 49 U.S.C. § 20106 (emphasis added). As Plymouth is not a "State," the challenged Plymouth ordinance is not within the FRSA's preemption clause exceptions.[2] In *Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108 (5th Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973), the Fifth Circuit held that "individual [local, parish] officials are without authority under the [FRSA] to require the Railroad to meet any safety standard beyond those provided for in the national Act." *Id.* at 1113. The Michigan Supreme Court has noted that "a unanimous line of precedent in the lower federal courts" supports these holdings. *Grand Trunk W. R.R. v. City of Fenton,* 439 Mich. 240, 482 N.W.2d 706, 709 (1992) (holding that these exceptions "apply, in any event, only to the states and not to local governments"), *cert. denied,* 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993); *see, e.g., City of Covington v. Chesapeake & O. Ry.,* 708 F.Supp. 806, 808–809 (E.D.Ky.1989) (holding that FRSA preempted city ordinance regulating the speed of

trains within city limits, notwithstanding that the city was empowered to regulate speed of trains within its boundaries by Kentucky statute); *CSX Transp., Inc. v. City of Tullahoma,* 705 F.Supp. 385, 387–388 (E.D.Tenn. 1988) (holding the FRSA preemption exception did not cover regulation by municipal ordinance); *Chesapeake & O. Ry. v. City of Bridgman,* 669 F.Supp. 823, 826 (W.D.Mich. 1987) (holding that municipal ordinance was preempted by FRSA and void under Supremacy Clause).

The challenged ordinance was promulgated under authority granted to Plymouth by Article 7, § 29 of the Michigan Constitution.[3] Plymouth contends that CSXT's challenge amounts to an unwarranted interference with this authority. A state "law, regulation, or order related to railroad safety" may regulate local safety hazards under the second exception to the FRSA preemption clause. 49 U.S.C. § 20106. Municipal legislation, however, neither becomes the "law, regulation, or order" of a state when promulgated under state constitutional authority nor meets an FRSA preemption clause exception because it is authorized by a state constitution. *See CSX Transp., Inc. v. City of Thorsby,* 741 F.Supp. 889, 891 (M.D.Ala.1990) (reasoning in this context that "[i]t is ... a city ordinance and not a state law or regulation which is at issue. The fact that the city may have acted on delegated authority does not detract from ... this dispositive fact"); *City of Covington,* 708 F.Supp. at 808 (" 'Congress did not intend to permit states to exercise their remaining authority under [the FRSA preemption clause] by delegating it to municipalities' ") (quoting *Consolidated Rail Corp.*

---

1. The FRSA preemption clause provides:

   Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. A *State* may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement. A *State* may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation or order—(1) is necessary to eliminate or reduce an essentially local safety hazard; (2) is not incompatible with a law, regulation, or order of

the United States Government; and (3) does not unreasonably burden interstate commerce. 49 U.S.C. § 20106 (emphasis added).

2. We do not address the remaining factors listed in the preemption clause exceptions because, as a threshold matter, these exceptions apply only to States.

3. This section provides in pertinent part: "Except as otherwise provided in this constitution the right of all counties, townships, cities, and villages to reasonable control of their highways, streets, alleys and public spaces is hereby reserved to such local units of government." 1963 MICH. CONST. Art. 7, § 29.

*v. Smith,* 664 F.Supp. 1228, 1237 (N.D.Ind. 1987)).

Plymouth argues that "CSXT has been unable to produce any evidence that the Secretary has considered this field of regulation as a matter of railway safety under the act." Only *state* laws regulating areas in which there have been no regulations promulgated are excepted from the FRSA preemption clause. The lack of such evidence is therefore irrelevant.

■ The FRSA preempts *municipal* "laws, regulations, orders, and standards *related to* railroad safety," 49 U.S.C. § 20106 (emphasis added). A federal statute that expressly calls for preemption of matters "relating to" the subject matter of that statute, preempts "actions having a connection with or reference to" that subject matter. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). Thus, in determining whether challenged "laws, regulations, or orders relate[ ] to railroad safety," 49 U.S.C. § 20106, this court must determine whether there is the requisite "connection with or reference to" railroad safety.[4] *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037; *see also American Airlines, Inc. v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 821, 130 L.Ed.2d 715 (1995) (applying this definition to the phrase "relates to").

■ The Plymouth ordinance does not, on its face, make "reference to" railroad safety. *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037. Plymouth contends that this ordinance is not preempted because it was enacted to "promote the general welfare of its residents, and was not directed towards and does not regulate any aspect of 'railroad safety.'" Neither

that purpose nor the lack of a "reference to" railroad safety precludes a finding that the ordinance is "related to" railroad safety because the ordinance has a "connection with" railroad safety.

In the ERISA context, where retirement benefit plans are the federal statute's subject-matter, "a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Morales,* 504 U.S. at 386, 112 S.Ct. at 2038 (citations omitted). In determining whether the Plymouth ordinance has "a connection with" and is thus related to railroad safety, this court must necessarily look at the terms of the ordinance and what the ordinance requires in terms of compliance. As noted by the district court, "[t]he Plymouth ordinance does not, nor cannot mandate the manner in which a carrier must comply." It is on the basis of potential safety aspects of compliance with the ordinance that the challenged ordinance relates to railroad safety. Taking the evidence in the light most favorable to Plymouth, it appears that compliance with the challenged ordinance would require either shorter or faster trains.[5]

Requiring trains to be shorter would necessarily require CSXT to use more trains. The district court, quoting an April 1989 Report of Secretary of Transportation to the United States Congress, noted that "'[c]hanges in highway traffic volumes and total trains per day affect accident rates more than other factors.'" Plymouth presents no evidence contrary to this conclusion.[6] As the evidence indicates that accident rates would be affected by compliance in this manner and accident rates unquestionably relate

---

4. Plymouth relies on *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In that case, the Supreme Court held that the FRSA did not preempt *state* common law of negligence. The Court applied a much stricter test for preemption in determining whether state common law qualified under the first FRSA preemption exception which, as explained *supra,* is wholly inapplicable to the Plymouth ordinance. The stricter test was part of the Court's analysis as to whether the Secretary of Transportation had issued regulations "covering the subject matter of the State requirement." *Easterwood,* 507 U.S. at 662, 113 S.Ct. at 1736–

1737 (quoting 49 U.S.C. § 20106). The Court noted (and distinguished) the "broad pre-emptive effect" given the phrase "relating to" in *Morales. Id.* at 664, 113 S.Ct. at 1738.

5. Plymouth contends that CSXT could comply by adding a "pusher engine" to its trains or by altering the structure of its tracks, thereby increasing the speed of its trains.

6. Plymouth cites only a passage from the same report that states, "rail-highway issues (mobility and community development) are not safety issues per se."

to railroad safety, the ordinance is "related to railroad safety." This is true even though this relationship is from an "effect [that] is only indirect." *Morales*, 504 U.S. at 386, 112 S.Ct. at 2038.

Taking the evidence in any light, faster trains, the only logical compliance alternative to shorter trains, also have a connection with and are thus related to railroad safety. The Secretary of Transportation's report indicates the obvious: higher average train speeds increase the number of "fatal accidents, as a proportion of all accidents." This is true whether these trains would be made faster by existing engine power, an extra "pusher engine," or altered tracks.[7]

Plymouth also contends that the district court erred in failing to "limit its analysis to whether the application of the Ordinance compelled [CSXT] to violate rules of the Secretary of Transportation regarding railway safety." CSXT argues that the ordinance is preempted because regulations have been promulgated (or considered and not promulgated) in the precise areas in which the ordinance attempts to regulate. Analysis of municipal ordinances under the FRSA preemption clause requires only a finding that the challenged ordinance is "related to railroad safety," not that the challenged legislation compels violation of or mirrors regulations promulgated under the authority of the FRSA. "[M]inimum safety requirements" governing train operating speeds have been promulgated under the authority of the FRSA. 49 C.F.R. 213.1–9. "Separate municipal regulation of speed is so greatly at odds with the Congressional purpose of uniformity as to need no further argument." *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228, 1238 (N.D.Ind.1987). As the Plymouth ordinance is "related to railroad safety," it is expressly preempted by the FRSA. As there are no issues of material fact, summary judgment was properly granted to CSXT.[8] In light of CSXT's entitlement to judgment based on FRSA preemption, we need not

rule on CSXT's Commerce Clause and discriminatory taxation claims.

AFFIRMED.

---

7. The Secretary's report clearly indicates that better track conditions, the compliance alternative suggested by Plymouth, lead to higher train speeds and thus higher rates of fatal railroad accidents.

8. The only apparent issue of fact is whether compliance with the challenged ordinance would be possible. In light of the relationship of the compliance alternatives and railroad safety, that issue is not material.