**CEDAR BLUFF 24–HOUR TOWING, INC. Plaintiff,**

v.

**CITY OF KNOXVILLE, Defendant.**

No. 3:98–CV–212.

United States District Court,
E.D. Tennessee,
at Knoxville.

March 8, 1999.

Michael P. McGovern, Ayers & Parkey, Knoxville, for Plaintiff.

George T. Underwood, Jr., City of Knoxville, Department of Law, Knoxville, TX, Charles W. Swanson and Jason H. Long, Sheppeard & Swanson, Knoxville, TX, for Defendant.

### MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is before the court on the parties' motions for summary judgment [docs. 6 and 12]. The parties have responded to the respective motions, and oral argument on the motions has been heard by the court. For the reasons discussed below, the plaintiff's motion for summary judgment will be granted in part and denied in part, and the defendant's motion for summary judgment will be denied.

In its Amended Complaint, the plaintiff alleges that the city of Knoxville's wrecker

ordinance (Art. IV, ch. 26 of the City Code, § 26–226, *et seq.*) has been preempted, in large part, by federal law (49 U.S.C. § 14501(c)). Specifically, the plaintiff alleges that the City's wrecker ordinance attempts to regulate the route, service and price of consensual towing services provided by wrecker companies like the plaintiff. The plaintiff seeks a declaration that the provisions of the City's wrecker ordinance which regulate route, service or the price of consensual towing services have been preempted by federal law. The plaintiff also seeks to have the City enjoined from further administration and enforcement of the provisions of the City's wrecker ordinance which have been preempted by federal law.

The plaintiff is a wrecker company engaged in the business of towing vehicles. Since 1962 the City of Knoxville has had an ordinance in place for the regulation of tow trucks, which has been amended from time to time. The ordinance requires any person who wishes to engage in the towing business to have a Certificate of Public Convenience and Necessity. To obtain such a certificate, the wrecker owner must pay a non-refundable fee of $100.00, demonstrate compliance with certain technical vehicle equipment specifications, provide proof of financial responsibility, and conform to some general regulations. The wrecker owner must also verify his experience in the towing industry and provide information as the number of tow trucks to be operated and the location of storage facilities. Any tow truck paint design, monogram, or insignia must be approved by the wrecker inspector. Once a wrecker owner demonstrates compliance with all these provisions, a Certificate of Public Convenience and Necessity will be issued by the City. Once the Certificate is issued, the wrecker owner must keep certain logs and copies of invoices and make them available to the City upon request. Any violation of State or federal law of the wrecker ordinance that "reflects unfavorably on the fitness" of the wrecker owner may result in suspension or revocation of the Certificate.

### LEGAL DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In this case the parties have agreed that there are no facts in dispute, and that summary judgment would be the appropriate disposition of this civil action.

In August 1994, Congress passed the Federal Aviation Administration Authorization Act (FAAA Act), codified at 49 U.S.C. § 14501 *et seq.* The Act became effective on January 1, 1995. Section 14501(c)(1) provides as follows:

(c) Motor carriers of property.—

(1) General rule.—Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any motor private carrier, broker or freight forwarder with respect to the transportation of property.

Section 13102(12) defines "motor carrier" as "a person providing motor vehicle transportation for compensation." The parties do not dispute that § 14501(c) applies to tow trucks.

Congress provided for two exceptions to the statute: (1) states could regulate safety and the financial responsibility of motor carriers of property and (2) movers of household goods were exempted.[1] In 1995,

---

1. Section 14501(c)(2) provides:
(2) Matters not covered.—Paragraph (1)—
(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the

Congress amended the 1994 Act adding a third exception which provides as follows:

> (C) [Paragraph 1] does not apply to the authority of a State or political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

49 U.S.C. § 14501(c)(2)(C).

Thus, federal law expressly preempts any attempt by a state or a political subdivision of a state from enacting or enforcing any law or regulation of tow trucks related to "price, route, or service." However, **states** have been given the authority to regulate safety and financial responsibility of tow trucks, and **states and political subdivisions of states** have been given the authority to regulate the price of non-consensual towing services.

In reliance on these statutory provisions, the plaintiff argues that Congress has plainly and unambiguously preempted a municipality's regulation of tow trucks except as to the price of non-consensual towing services (towing services required, for example, because of an arrest, accident, or illegally parked vehicle). In spite of the statute's plain language, in its motion for summary judgment, the City argues that there is a strong presumption against federal preemption in areas traditionally occupied by the states. The City contends that if the court narrowly construes the terms of § 14501(c) and expansively construes the exceptions, then federal law will not be found to have preempted the City's wrecker ordinance.

The City argues that preemption should not be found by inference; that is, municipalities should not be excluded from regulating the towing industry in the absence of specific preemptive language, relying on

*Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). At issue in *Mortier* was the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). FIFRA authorizes a state to regulate pesticides, but does not mention political subdivisions of states. The Supreme Court found that the term "state" is not self-limiting and includes political subdivisions of states. *Id.* at 612, 111 S.Ct. at 2485. Thus, the Court found that FIFRA's grant of authorization to the states "leaves the allocation of regulatory authority to the 'absolute discretion' of the States themselves, including the option of leaving local regulation of pesticides in the hands of local authorities." *Id.* at 612, 111 S.Ct. at 2483.

This same argument was made in by the City of Atlanta in *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538 (11th Cir.1998). The issue before the Eleventh Circuit Court of Appeals was whether the City of Atlanta's wrecker ordinance had been preempted by § 14501(c). It appears, based on the Court's description of the Atlanta wrecker ordinance that the City of Knoxville's wrecker ordinance is nearly identical to Atlanta's. The Eleventh Circuit rejected the City of Atlanta's argument that the term "state" also includes political subdivisions and found that, unlike FIFRA, § 14501 expressly differentiates between states and their political subdivisions. *Id.* at 547. The Court noted that § 14501 has "no fewer than seven subsections that expressly preclude or authorize rulemaking by political subdivisions, while the subsection at issue in this case [§ 14501(c)(1)] conspicuously omits any reference to political subdivisions." *R. Mayer,* 158 F.3d at 547. The Eleventh Circuit also observed that other courts, including the Sixth Circuit, have declined to follow *Mortier* when interpreting preemption statutes of other federal

---

authority of the State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

(B) does not apply to the transportation of household goods.

statutes. *See, e.g., United States v. City and County of Denver*, 100 F.3d 1509, 1513 (10th Cir.1996) (following *Mortier* would produce a result contrary to the objectives of CERCLA); *Ohio Mfr. Ass'n v. City of Akron*, 801 F.2d 824, 829 (6th Cir.1986), *cert. denied*, 484 U.S. 801, 108 S.Ct. 44, 98 L.Ed.2d 9 (1987) (Congress' explicit reference to political subdivisions in the Occupational Safety Act demonstrates that Congress did "not simply overlook political subdivisions").

■ The Eleventh Circuit also pointed out that, "when Congress omits certain language in a particular subsection of a statute and includes the language in other subsections, the omission is intentional rather than accidental." *R. Mayer*, 158 F.3d at 545 (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994)). This presumption certainly applies to the statutory sections at issue in this case. Subsection 1 of § 14501(c)(1) only refers to states, while subsection § 14501(c)(2)(C) refers to both states and political subdivisions. It is unlikely that the omission of a reference to political subdivisions in subsection 1 was inadvertent given the fact, as mentioned above, that there are seven other specific references to both states and political subdivisions in other subsections of the same statute.[2]

This conclusion is further bolstered by the legislative history of the FAAA Act. The House Report accompanying the 1996 proposed amendment to the Act states that the purpose behind the amendment is to:

provide[ ] a new exemption from the preemption of State regulation of intrastate transportation relating to the price of non-consensual tow truck services. This is only intended to permit States or political subdivisions thereof to set maximum prices for non-consensual tows, and **is not intended to permit reregu-**

**lation of any other aspect of tow truck operations.**

H.R.Rep. No. 104–311, at 119–20 (1995) U.S.Code Cong. & Admin.News 1982, p. 793. (emphasis added). Thus, Congress' clear intent was to allow states and political subdivisions to address the price of non-consensual towing services, while leaving undisturbed the preemptive effect of the statute as it pertains to all other aspects of the towing industry. *See R. Mayer*, at 544. Prior to the amendment's passage, it was noted by Representative Rahall, "[t]he pending legislation would restore the local authority to engage in regulating the prices charged by tow trucks in non-consensual towing situations. **Regulation of routes and services, as well as regulation of consensual towing, would still be preempted."** 141 Cong. Rec. H15602 (1995) (emphasis added). The legislative history shows that Congress intended that regulation of the towing industry would be preempted except in the limited areas set out in the legislation. *See R. Mayer*, at 545.

■ This court finds the reasoning of the Eleventh Circuit in *R. Mayer* persuasive authority. Many of the same issues raised by the defendant in this case were raised and discussed in *R. Mayer*, and the Eleventh Circuit's determination of the issues comports with the plain language of the statute and its legislative history.

The defendant in this case also argues that since the City of Knoxville operates under a City Charter that has been granted the force of State law by the Tennessee General Assembly, the State of Tennessee has "expressly delegated" to the City the regulation of all motor vehicles operating within the City, including tow trucks. The City Charter provides that the City of Knoxville shall have the power to "regulate the operation of all motor and other vehicles." The Charter of the City of Knoxville, Art. II, Corporate Powers, § 209,

---

**2.** Subsections 14501(a), 14501(b), 14501(c)(1), 14501(c)(2)(C), 14501(c)(3)(A), 14501(c)(3)(B) and 14501(c)(3)(C) all reference both states and political subdivisions, while subsection 14501(c)(2)(A) references only states.

Regulation of Vehicles. The Charter was approved by the Tennessee Legislature in 1923.

In response to the City's argument, the plaintiff relies on *CSX Transportation, Inc. v. City of Plymouth*, 86 F.3d 626 (6th Cir.1996). In *CSX*, the City of Plymouth, Michigan, argued that its local ordinance prohibiting trains from obstructing streets for more than five minutes and requiring more than five minutes between obstructions was promulgated pursuant to the authority granted to the City of Plymouth by the Michigan Constitution. *Id.* at 627. Thus, the City of Plymouth argued, even though the Federal Railway Safety Act specifically allowed only states to adopt regulations related to railway safety, its ordinance was authorized due to the delegation of authority in the Michigan Constitution. *Id.* at 628. The Sixth Circuit held that "municipal legislation, however, neither becomes the 'law, regulation, or order' of a state when promulgated under state constitutional authority nor meets an FRSA preemption clause exception because it is authorized by a state constitution". *Id.; see also City of Covington v. Chesapeake & Ohio Ry.*, 708 F.Supp. 806, 808 (E.D.Ky.1989) ("Congress did not intend to permit states to exercise their remaining authority under [the FRSA preemption clause] by delegating it to municipalities") (quoting *Consolidated Rail Corp. v. Smith*, 664 F.Supp. 1228, 1237 (N.D.Ind. 1987).

This court finds that the *City of Plymouth* case disposes of the City's delegation argument. Even though the Tennessee Legislature has approved the City's Charter, and the City's Charter allows the City to "regulate the operation of all motor and other vehicles," the City's ordinance does not become the "law" of the state simply because the City's Charter has been approved.

Thus, the court finds the City's argument that its wrecker ordinance is rationally related to the safety and financial accountability is unavailing. In fact, any part of the ordinance which attempts to regulate the safety and financial accountability of tow trucks has been expressly preempted by federal law. The court finds that sections 26–226, 26–241 to 244, 26–245(b), 26,–246, 26–261 to 264, 26–276, 26–279 to 281, 26–283 to 285, and 26–288 to 289 of the City's wrecker ordinance have been preempted by federal law.

In its motion for summary judgment, the plaintiff also challenges the price for non-consensual towing services provided in the City's wrecker ordinance. The plaintiff alleges that the City set its prices arbitrarily without conducting any hearings on the proposed pricing scheme. The plaintiff does not argue that the prices are not compensatory and reasonable, only that the City should have allowed the wrecker companies to have some input before setting the prices. The plaintiff relies on the law concerning rate-making by Tennessee regulatory agencies to support its argument that there are certain formalities which should have been complied with before prices were established.

■ First, the statutes relied upon by the plaintiff only to rate making by public utilities and carriers. *See* Tenn.Code Ann. §§ 65–5–201 and 203. The City is neither a public utility nor a carrier within the meaning of the statutes. Second, the case the plaintiff cites in support of its argument stands for the proposition that the Tennessee Public Service Commission must set rates for public utilities that are within the "zone of reasonableness." *See Tennessee Cable Television Ass'n v. Tennessee Pub. Serv. Comm'n*, 844 S.W.2d 151, 159–60 (Tenn. Ct. App.1992). Even if this case could be read to apply to the City as a "rate maker," the plaintiff has not alleged that the prices the City set for non-consensual towing services are unreasonable. In the absence of any such claim, the court finds that the plaintiff's motion for summary judgment on this issue must be denied.

Finally, the plaintiff also argues that one other section of the City's wrecker ordinance is not precisely related to the price

of non-consensual towing services and it is also preempted by federal law. Section 26–277 of the City's ordinance sets the price a wrecker company may charge for winching services and vehicle storage. The plaintiff says that the exception allowing municipalities to regulate the price of non-consensual towing services is limited to prices of "for-hire motor vehicle transportation by a tow truck," (49 U.S.C. § 14501(c)(2)(C)) and winching services and vehicle storage are not "transportation" of vehicles.

In its response, the City agrees with the plaintiff's argument but points out that winching services and vehicle storage regulations are not preempted at all by the plain language of § 14501(c)(1). The City argues that that section only purports to preempt the "price, route, and service ... with respect to the transportation of property." In support of its argument, the City cites the court to an unreported Report and Recommendation, *Rhode Island Public Towing Association, Inc. v. State*, 1997 WL 135571 (D.R.I. Feb.28, 1997), *approved by*, 1997 WL 225695 (D.R.I. Mar.26, 1997). In the Rhode Island case, the court found that storage of vehicles is "too attenuated from the regulation of transportation of property to fall within the scope of the FAAA Act. Put simply: storage has almost nothing to do with transportation because the two phases involve mutually exclusive aspects of a towing transaction." *Id.* at *5.

▪▪▪ This court agrees with the reasoning of the *Rhode Island* court with respect to vehicle storage, but winching services are a different matter. The *Rhode Island* court recognized that the "transportation phase of a tow involves the actual hooking and towing of a vehicle ...." Thus, the price of winching services would appear to this court to be part and parcel of the transportation of the towing

operation and covered by the exception in § 14501(c)(2)(C).

The plaintiff's motion on this issue will be denied.

### *CONCLUSION*

For the reasons discussed above, the plaintiff's motion for summary judgment will be granted in part and denied in part. The court declares that sections 26–241 to 244, 26–245(b), 26–246, 26–261 to 264, 26–276, 26–279 to 281, 26–283 to 285, and 26–288 to 289 of the City's wrecker ordinance have been preempted by federal law. The court finds that sections 26–277 and 26–290[3] of the City's wrecker ordinance have not been preempted by federal law. The City of Knoxville is enjoined from enforcing any of the above-referenced sections of the City of Knoxville's wrecker ordinance. The plaintiff has requested attorney's fees and costs. If the plaintiff intends to pursue this claim, the plaintiff shall file a brief within fourteen days of the entry of this order setting out the statute, rule, or other grounds entitling the plaintiff to an award of attorney's fees in this case. *See* Fed. R.Civ.P. 54(d)(2). Costs shall be allowed as of course to the prevailing party, the plaintiff, in this case. Fed.R.Civ.P. 54(d)(1). An order reflecting this opinion shall be entered.

### *ORDER*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this Order, it is hereby **ORDERED** that the plaintiff's motion for summary judgment [doc. 6] is **GRANTED IN PART AND DENIED IN PART,** and the defendant's motion for summary judgment is **DENIED.** The court **DECLARES** that sections 26–241 to 244, 26–245(b), 26–246, 26–261 to 264, 26–276, 26–279 to 281, 26–283 to 285, and 26–288 to 289 of the City's wrecker ordinance have been preempted by federal law. The court finds that sections 26–277 and 26–290[1] of the City's

---

**3.** This section of the City's wrecker ordinance merely creates the Wrecker Service Commission and gives the Commission to enforce the lawful provisions of the ordinance.

**1.** This section of the City's wrecker ordinance merely creates the Wrecker Service Commission and gives the Commission to enforce the lawful provisions of the ordinance.

wrecker ordinance have not been preempted by federal law. It is further **OR-DERED** that the City of Knoxville is **EN-JOINED** from enforcing any of the above-referenced sections of the City of Knoxville's wrecker ordinance.

The plaintiff has requested attorney's fees and costs. If the plaintiff intends to pursue this claim, the plaintiff shall file a brief within fourteen days of the entry of this order setting out the statute, rule, or other grounds entitling the plaintiff to an award of attorney's fees in this case. *See* Fed.R.Civ.P. 54(d)(2). Costs shall be allowed as of course to the prevailing party, the plaintiff, in this case. Fed.R.Civ.P. 54(d)(1).