**Anna PETREY, d/b/a Magnum Towing, Plaintiff,**

v.

**CITY OF TOLEDO, Defendants.**

**No. 3:98CV7188.**

United States District Court,
N.D. Ohio,
Western Division.

June 10, 1999.

## ORDER

CARR, District Judge.

In this case, plaintiff challenges the validity of defendant's municipal towing regulations under the Federal Aviation Administration Act of 1994 (FAAA) and the United States Constitution. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion for summary judgment (Doc. 12). For the following reasons, defendant's motion shall be granted in part and denied in part.

### Background

Plaintiff has been doing business as a towing company since 1991. Plaintiff obtained Class B licenses in 1991, 1994, 1995, 1996, and 1997. Class B licenses permit their holders to conduct consensual tows of vehicles within city limits. TOLEDO MUNICIPAL CODE §§ 765.01(j) & 765.02(a)(2).

In 1995, 1996, and 1997, plaintiff applied for Class A towing licenses.[1] Class A licenses permit their holders to conduct consensual or non-consensual, police-ordered tows. TOLEDO MUNICIPAL CODE §§ 765.01(h) & 765.02(a)(1). In 1995, plaintiff's application was denied. In 1996, plaintiff's application was denied. In 1997, plaintiff withdrew her Class A application in order to apply for a Class B license.[2]

On January 1, 1996, the FAAA became effective. 49 U.S.C. § 14501. Thus, plaintiff's inability to obtain a Class A license in 1996 and 1997 is subject to analysis under the FAAA. Also, defendant enacted enhanced towing standards on September 16, 1997. TOLEDO MUNICIPAL CODE §§ 765.01–

John David Latchney, Reminger & Reminger, Cleveland, OH, for Plaintiff.

James G. Burkhardt, Barbara E. Herring, Edward M. Yosses, City Of Toledo, Department Of Law, Toledo, OH, for Defendants.

---

1. Plaintiff makes no mention of a 1998 application in her amended complaint and briefs. Thus, denial of a Class A application in 1998 is not at issue in this case.

2. Defendant contends that plaintiff's 1997 application is not at issue by her own admission. (Doc. 15 at 106–107). I disagree with this interpretation of plaintiff's deposition testimony. While plaintiff admits that a few paragraphs of her amended complaint refer only to the 1996 application, other paragraphs of the complaint are not necessarily so limited. (*Id.*)

Defendant also contends that plaintiff's 1997 application is not at issue because plaintiff failed to exhaust administrative remedies for that application. Defendant, however, points to no case law suggesting that exhaustion of remedies was necessary. Therefore, I find that denial of plaintiff's 1997 application is at issue in this case.

99. These new standards are subject to analysis under the FAAA.

### Jurisdiction: Officer Rankin

At the outset, defendants contend that all claims against defendant Officer Dennis E. Rankin must be dismissed for failure to serve process. *See* Ohio R. Civ. P. § 4.2. Plaintiff concedes that Officer Rankin was not served. (Doc. 25 at unnumbered 6). Consequently, all claims against Officer Rankin in his individual and official capacities shall be dismissed.

### Summary Judgment Analysis

Defendant City of Toledo moves for summary judgment as to all of plaintiff's remaining claims. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings· or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### Count I: Preemption

Plaintiff claims that certain sections of Toledo Municipal Code Chapter 765 are preempted by the FAAA and are therefore unenforceable. Specifically, plaintiff challenges Toledo Municipal Code §§ 765.03(b)(5) (storage requirement), 765.03(b)(6) (special use permit requirement), 765.03(c)(3) (two years in business requirement), and 765.03(c)(5) (heavy equipment commercial drivers license requirement) [3] as well as Rule of the Director of Public Safety No. 10034 (limit on number of towers per district). (Doc. 13 Appendix; Doc. 19 Tabs B–C). Plaintiff seeks a declaration that these requirements are preempted and an injunction to prevent defendant from enforcing or applying the provisions.[4]

---

**3.** Sections 765.03(b)(5), 765.03(b)(6), and 765.03(c)(3) appear in both the pre–1997 (Doc. 19 Tab B) and post–1997 (Doc. 13 Appendix) versions of Chapter 765. Section 765.03(c)(5) appears only in the post–1997 version. (Doc. 13 Appendix).

I note that I am addressing the special use permit requirement, § 765.03(b)(6), only as part of the municipal towing regulations. I shall not decide whether that provision is illegal "spot zoning." In any event, I fail to see how plaintiff's alleged failure to apply for a special use permit supports denial of her Class A license application, as plaintiff's per-

mit application had to include "a letter of intent by the Toledo Police Division to issue a Class A towing license contingent upon the granting of a Special Use Permit." TOLEDO MUNICIPAL CODE § 1167.01(b)(14). Plaintiff cannot be faulted for her failure to apply for a special use permit because, according to defendant, she did not otherwise qualify for a Class A license and could not receive the required letter of intent.

**4.** I note that the Toledo Municipal Code contains a severability provision which states the following:

The FAAA sections, as finally codified, which create this controversy begin with a general rule:

a State, [or a] political subdivision of a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). The FAAA also creates several exceptions. For example, the general rule does not preempt:

the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

42 U.S.C. § 14501(c)(2)(A). The term "State" is defined as "the 50 States of the United States and the District of Columbia." 49 U.S.C. § 13102(18).

Plaintiff urges me to find that § 14501(c)(1) expressly preempts the Toledo provisions at issue, and that the provisions do not fall under the exception in § 14501(c)(2)(A).

### a. Express Preemption by § 14501(c)(1)

Plaintiff argues that § 14501(c)(1) generally preempts state and local regulation of the entire towing industry. *See R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538, 543 (11th Cir.1998). Defendant, by relying on a case that assumes the same, appears to agree. *See Ace Auto Body & Towing v. City of New York,* 171 F.3d 765, 771 (2d Cir.1999). Defendant

If any provision of a section of the Municipal Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect the other provisions or application s of the section or related sections which can be given effect with-

does contend, however, that the case relied upon by plaintiff is distinguishable from the present case.

According to defendant, *Mayer* is inapplicable because it addresses only consensual towing and this case deals with non-consensual towing. Defendant recites a host of differences between the two kinds of towing in an attempt to show that the *Mayer* court missed important issues. (Doc. 22 at 4–5). While those issues might be relevant for other purposes, express preemption is simply a matter of statutory construction; practical differences between towing classifications are irrelevant.

Defendant correctly asserts that *Mayer*'s holding about express preemption specifically mentions only consensual towing. However, defendant points to no language in the opinion suggesting that this finding should not apply to non-consensual towing as well. In fact, the *Mayer* opinion suggests otherwise. The court states that "under the plain, ordinary meaning of the terms used in § 14501(c)(1), the federal statute expressly preempts state and municipal ordinances that regulate the prices, routes, or services provided by towing companies." *Mayer* at 543. Nothing in this statement leads to the conclusion that only consensual towing is preempted.

■ I find that § 14501(c)(1) expressly preempts local regulation of consensual and non-consensual towing.

### b. Exception in § 14501(c)(2)(A)

The next issue is whether the Toledo provisions are saved by one of the exceptions in § 14501(c)(2)(A). This likewise is an issue of statutory construction.

There is a direct circuit split about whether the § 14501(c)(2)(A) exceptions, which expressly apply only to States, cover

out the invalid provision or application, and to this end the provisions are severable. ToLEDO MUNICIPAL CODE § 101.08. Therefore, my rulings in this case shall only apply to the specific provisions enumerated above.

municipalities as well. *Compare Mayer,* 158 F.3d 538 (11th Cir.1998) *with Ace,* 171 F.3d 765 (2d Cir.1999). The Sixth Circuit has not considered whether the FAAA allows a state to delegate its remaining regulatory authority to a municipality.

Plaintiff urges me to adopt the Eleventh Circuit's reasoning in *Mayer,* which held that the exceptions in § 14501(c)(2)(A) do not allow municipalities to adopt ordinances regulating tow truck operators. *See Mayer* at 545–48. Defendant argues that the *Mayer* decision is unsound, urging me to adopt instead the Second Circuit's reasoning in *Ace.*[5] *Ace* held that the exceptions do authorize municipal ordinances. *See Ace* at 776.

First, defendant contends that the reasoning in *Mayer* is unsound because the Eleventh Circuit ignored *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). In *Mortier,* the Supreme Court found that the Federal Insecticide, Fungicide, and Rodenticide Act's (FIFRA) express authorization of "State," but not local, regulation of pesticides does not preempt regulation by political subdivisions. *See Mortier,* at 605–09, 111 S.Ct. at 2482–83.

Rather than ignoring *Mortier,* the *Mayer* court discussed *Mortier* at some length, finding that *Mortier* does not "establish[ ] a rule that the word 'state' must be interpreted to include political subdivisions in all circumstances." *Mayer* at 547. The *Mayer* court initially distinguished *Mortier* based on statutory wording. The FIFRA provision at issue in *Mortier* includes no references to, and FIFRA as a whole contains only scattered mention of, political subdivisions. *See id.* at 547, 111 S.Ct. 2476. FAAA § 14501, however, has seven subsections that expressly preclude or authorize regulation by political subdivisions, with the exceptions in § 14501(c)(2)(A) conspicuously omitting any such reference.

*See id.* Unlike in FIFRA, frequent use of the term "political subdivisions" in § 14501 makes it unlikely that Congress simply overlooked the term's inclusion in § 14501(c)(2)(A). *See Ohio Mfrs. Ass'n v. City of Akron,* 801 F.2d 824, 829 (6th Cir.1986) (concluding that Congress did not simply overlook inclusion of political subdivisions in the Occupational Safety and Health Act's preemption provision based on Congress' practice with respect to other statutes and the fact that political subdivisions are referred to in other sections of the Act).

Next, the *Mayer* court distinguished *Mortier* based on legislative history. The *Mortier* court found FIFRA's legislative history to be complex and ambiguous while the *Mayer* court believed intentional omission of political subdivisions is consistent with the FAAA's legislative history. *See Mayer* at 547. Unlike FIFRA's ambiguous legislative history, the FAAA's legislative history supports the *Mayer* court's statutory construction.

Finally, the *Mayer* court distinguished *Mortier* contextually. *Mortier* dealt with a silent preemption clause. *Mayer,* on the other hand, dealt with a silent exception to a preemption clause; the preemption clause itself expressly applies to political subdivisions. *See id.* at 547 n. 7. Although the context is different, both courts gave statutory silence the same effect. In *Mortier,* statutory silence was insufficient to establish preemption. In *Mayer,* statutory silence was insufficient to establish an exception to express preemption.

Second, defendant claims that the *Mayer* court gave "short shrift to reconciling statutes that conflict with the FAAA." (Doc. 22 at 7). Defendant lists no conflicting statutes other than the Hazardous Materials Transportation Authorization Act (HMTA), which the *Mayer* court did discuss. *See Mayer* at 547–48. The *Mayer*

---

**5.** Defendant argues that *Ace* should apply to this case because the towing program at issue is more similar to the programs in *Ace* than the programs in *Mayer.* The answer to this

argument is that the content of defendant's program is irrelevant if the FAAA preempts local towing regulations without exception.

court found that, by viewing regulation under the HMTA as "a narrow exception to the general preemptive scope of § 14501(c)(1)," the FAAA and HMTA may be reconciled. *Id.* at 548.

Regulations relating to hazardous waste transportation must avoid preemption under § 5125 of the HMTA, which precludes state and local laws that are inconsistent with the HMTA. 49 U.S.C. § 5125. Those regulations that escape preemption under § 5125 must also escape the broader preemptive sweep of § 14501(c)(1) of the FAAA. Pursuant to the *Mayer* court's holding, only state regulations may escape preemption through the § 14501(c)(2)(A) exceptions. Thus, a conflict between the FAAA and HMTA potentially occurs when a local regulation avoids preemption under the HMTA but is still preempted under the FAAA.

Defendant produces no evidence to show that this situation will ever occur, let alone occur often enough to render the HMTA ineffective. *Cf. Blanchette v. Connecticut Gen. Ins. Corp.,* 419 U.S. 102, 133, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (finding that two statutes should be read in a manner that gives effect to both unless there exists a "clearly expressed congressional intention to the contrary") (internal quotation and citation omitted). With respect to highway routing of hazardous material in particular, conflict is nonexistent because only states and not political subdivisions are authorized to regulate under the HMTA. 49 U.S.C. § 5112. I agree with the *Mayer* court's conclusion that there is no irreconcilable conflict between the HMTA and FAAA. *See Mayer* at 548.

Third, defendant contends that the *Mayer* court "totally disregarded" other district court decisions construing the FAAA. (Doc. 22 at 7). Actually, the Eleventh Circuit mentioned several district court opinions and gave reasons for disagreeing with those holdings. *See Mayer* at 545, 547–48. In any event, the Eleventh Circuit was not bound by lower court decisions.

Defendant urges me to adopt the Second Circuit's reasoning in *Ace,* which declined to follow the Eleventh Circuit and held that " § 14501(c)(2)(A) does not limit the authority of a state to delegate its towing regulatory authority to local or municipal governments." *Ace* at 776. While the reasoning in *Ace* is also persuasive, there is relevant Sixth Circuit precedent, cited in *Ace,* which suggests that I follow *Mayer. See Ace* at 776 (citing *CSX Transportation, Inc. v. City of Plymouth,* 86 F.3d 626 (6th Cir.1996)).

In *CSX,* the Sixth Circuit analyzed an exception to the Federal Railway Safety Act (FRSA) preemption clause. *See CSX,* 86 F.3d 626. The exception, like the exception in the present case, applies only to a "State ... law, regulation, or order." 49 U.S.C. § 20106. The court found that the City of Plymouth is not a "State" such that the challenged Plymouth ordinance is not within FRSA's preemption clause exceptions. *See CSX* at 628.

The Sixth Circuit came to this conclusion despite the fact that the Plymouth ordinance, like Chapter 765 of the Toledo Municipal Code, was promulgated under authority granted by the State Constitution. *See id.; see also* Ohio Const. Art. XVIII § 3. The court clearly stated that municipal legislation "neither becomes the 'law, regulation, or order' of a state when promulgated under state constitutional authority nor meets an FRSA preemption clause exception because it is authorized by a state constitution." *CSX* at 628.

Defendant claims that *CSX* is distinguishable from this case because the FRSA and FAAA were enacted for different reasons. Defendant argues that Congress enacted FRSA to establish nationally uniform regulations in the area of railroad safety, while Congress enacted the FAAA to eliminate economic constraints. Defendant cites no legislative history to show that this was the goal of each statute. Even the *Ace* court stated that, with respect to the FAAA, Congress' deregula-

tory purpose was ambiguous in scope. *Ace* at 776. Defendant's argument does not convince me that the Sixth Circuit would construe the language of the FAAA differently than it construed the language of the FRSA.

■ I find that the statutory construction issue presented in *CSX* is indistinguishable from the issue before me. Thus, I conclude that Sixth Circuit precedent requires me to follow the Eleventh Circuit's reasoning in *Mayer* rather than the Second Circuit's reasoning in *Ace*. Consequently, I find that the exception in § 14501(c)(2)(A) limits the authority of a state to delegate its regulatory authority over tow truck operators to local or municipal governments. Defendant's motion for summary judgment as to plaintiff's preemption claim shall be denied.

## Count II: Equal Protection

At the outset, defendant City of Toledo argues that this claim pertains only to defendant Officer Rankin. I disagree with this reading of the Amended Complaint, and find that the claim pertains to defendant City of Toledo as well. (Doc. 4).

Plaintiff claims that the application and enforcement of Toledo Municipal Code Chapter 765 has operated to deprive plaintiff of equal protection under the law. In response, defendant argues that plaintiff "has not offered sufficient evidence to support a § 1983 claim." Defendant disputes several factual allegations in plaintiff's complaint, but fails to explain why disproving those facts obviates plaintiff's equal protection claim.

Defendant also claims that plaintiff fails to establish the existence of a property interest. Defendant, however, fails to cite any case law supporting the proposition that there can be no property interest in a Class A license. Defendant's motion for summary judgment as to this claim shall be denied without prejudice to renew.

## Count III: Substantive Due Process

Plaintiff claims that application and enforcement of Toledo Municipal Code Chapter 765 has violated her substantive due process rights. In response, defendant makes the same evidentiary and property interest arguments discussed in relation to plaintiff's equal protection claim. Defendant's arguments are unpersuasive for the reasons discussed above. Defendant's motion for summary judgment as to this claim shall be denied without prejudice to renew.

## Count IV: Retaliation Under the First Amendment

Plaintiff claims that defendant retaliated against her in response to her complaints about Toledo Municipal Code Chapter 765. Once again, defendant argues that plaintiff "has not offered sufficient evidence to support a § 1983 claim." As discussed above, this argument is unpersuasive.

■ Defendant also argues that this claim must fail because defendant did not retaliate by enforcing Toledo ordinances in an unequal fashion. Defendant presents evidence that plaintiff's citations for failure to abide by the Toledo Municipal Code are not disproportionate when compared to other towers in Toledo. (Doc. 22, Stachura Aff.). Plaintiff does not respond to this evidence, failing to raise a genuine issue of material fact about whether retaliation occurred. Defendant's motion for summary judgment as to this claim shall be granted.

## Conclusion

For the foregoing reasons, it is hereby

**ORDERED THAT**

Defendant's motion for summary judgment (Doc. 12) shall be, and hereby is, granted in part and denied in part as follows:

1. All claims against Officer Rankin in his individual and official capacities are dismissed for failure to serve process;

2. Defendant's motion for summary judgment as to plaintiff's preemption claim is denied;

3. Defendant's motion for summary judgment as to plaintiff's equal protection claim is denied without prejudice to renew;

4. Defendant's motion for summary judgment as to plaintiff's substantive due process claim is denied without prejudice to renew;

5. Defendant's motion for summary judgment as to plaintiff's First Amendment claim is granted; and

6. Leave is granted to plaintiff to file a motion for summary judgment by June 30, 1999; defendant's opposition due July 10, 1999; plaintiff's reply due July 20, 1999.

**So ordered.**