BRISCOE, Circuit Judge,
concurring and dissenting:
I concur in part and dissent in part. I agree with the majority that the geographic division policy implemented by Sheriff Stites does not amount to a law, regulation, or other provision having the force and effect of law, and therefore is not preempted by 49 U.S.C. § 14501(c)(1). I disagree, however, with the majority’s similar assessment of the permit policy. In my view, the permit policy is preempted by § 14501(c)(1) because it has the force and effect of law and is “related to a price, route or service” of the plaintiffs. I would reverse and remand the case to the district court to determine whether, as asserted by defendants, the permit policy is saved by the safety exception set forth in § 14501(c)(2)(A).
Section 14501(c)(1) prohibits states and political subdivisions thereof from “enaet[ing] or enforcing] ... law[s], regulation[s], or other provision[s] having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property.” 49 U.S.C. § 14501(c)(1). As the majority correctly observes, the threshold question in applying § 14501(c)(1) is whether the policy at issue constitutes a “law, regulation, or other provision having the force and effect of law.” The policy at issue, i.e., the permit policy, was allegedly passed pursuant to a resolution of the Linn County Board of County Commissioners requiring any towing service operator contacted by sheriffs office dispatchers to have a “permit.” App. at 411 (indicating that the permit policy was enacted pursuant to the consensus agreement of the Board pursuant to the home rule powers allotted under Kansas law). It is unclear from the record whether the Board complied precisely with the terms of the Kansas home rule powers statute by publishing notice of the resolution “in the official county newspaper.” Kan.Stat.Ann. § 19-101a(b). Thus, I agree with the majority that the Towing Companies have failed to *632 show the permit policy is an official law or regulation enacted pursuant to the county’s home rule authority.
The question remains, however, whether the permit policy “has the force and effect of law.” In deciding this question, the majority correctly notes that the phrase “having the force and effect of law,” as used in § 14502(c)(1), “is most naturally read to ‘refe[rj to binding standards of conduct that operate irrespective of any private agreement.’ ” American Airlines, Inc. v. Wolens, 513 U.S. 219, 229 n. 5, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (interpreting identical phrase used in the Airline Deregulation Act of 1978). Applying this definition, the majority concludes that the permit policy does not have the force and effect of law because (1) the permit application “is a mere formality that requires no more from the tow operators than was previously required by law,” Op. at 630, and (2) even though the sheriff and county commission chairman must approve and sign each completed application, “[njeither person suffers a repercussion if he fails to approve and sign [a particular] permit form, or violates the policy by under or over-enforcement.” Id. at 631.
I disagree with the majority’s conclusions. Even though the majority characterizes the permit form as a “mere formality,” the fact is that the permit policy imposes binding standards of conduct on towing service operators interested in receiving business from the county (i.e., non-preference calls from the sheriffs dispatchers). If towing service operators do not complete the permit form, they will lose the towing business generated by non-preference calls from the sheriffs dispatcher. Our focus in addressing § 14501(c)(1) should be upon the permit policy’s effect upon the conduct of towing service operators, and not its effect upon the conduct of the sheriff and county commission chairman. By downplaying the effect of the permit policy upon towing service operators, the majority acts in contravention of the intended purpose of the Interstate Commerce Commission Termination Act (to preempt state regulation of intrastate motor carrier activities) and paves the way for other states or political subdivisions to impose their own unique procedural requirements on towing service operators or other motor carriers.
Because the permit policy, in my view, has the force and effect of law, it is expressly preempted by § 14501(c)(1) if it is “related to a price, route, or service” of the plaintiffs. There is no dispute that the permit policy does not expressly refer to, or have a significant economic effect upon, towing service rates. It is apparent, however, that the permit policy expressly refers to towing services. On its face, the policy applies solely to towing service operators and provides that such operators must have a county-authorized permit before they are eligible to be placed on the county’s referral list and receive calls for towing service from sheriffs office dispatchers. Although the permit policy does not, as pointed out by the majority, impose any new substantive standards upon towing service operators, this appears to be irrelevant for preemption purposes in light of Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (construing in a broad fashion similar “related to” language in the Airline Deregulation Act of 1978 and holding that it results in preemption of any state or local law that has a “connection with or reference to” airline rates, routes, or services). Thus, the permit policy runs afoul of § 14501(c)(1).
Defendants assert that even if the permit policy is otherwise preempted by § 14501(c)(1), it is saved by § 14501(c)(2)(A), which provides that *633 § 14501(c)(1) “shall not restrict the safety regulatory authority of a State with respect to motor vehicles.” 49 U.S.C. § 14501(c)(2)(A). This argument raises a factual issue which requires remand to the district court. There appears to be a genuine factual dispute concerning whether the permit policy was actually implemented by the Board for safety reasons. For example, contrary to the defendants’ current assertions on appeal, defendant Read, one of the Linn County Commissioners, testified that the permit requirement was implemented solely due to concerns about the county’s potential liability if it contacted and utilized a towing service that had not satisfied otherwise applicable state and federal requirements. App. at 414. Assuming, arguendo, the permit policy was adopted for safety reasons, there are also two significant legal questions that must be resolved. First, there is the question of whether § 14501(c)(2)(A)’s safety exception applies to regulations implemented by political subdivisions of a state (as opposed to regulations implemented by the state itself). There is currently a split of opinion concerning whether § 14501(c)(2) applies to laws and regulations implemented by political subdivisions of a state. Some courts have concluded that the exception applies only where the safety regulation at issue was implemented by the state itself. See R. Mayer of Atlanta, Inc. v. City of Atlanta, 158 F.3d 538, 545-46 (11th Cir. 1998) (“[W]e view Congress’ omission of a reference to a state’s political subdivisions from § 14501(c)(2)(A) as a manifestation of Congress’ intent that municipal safety and insurance regulations are not exempted from the preemptive scope of § 14501(c)(1).”), cert. denied, 526 U.S. 1038, 119 S.Ct. 1334, 143 L.Ed.2d 498 (1999); Petrey v. City of Toledo, 61 F.Supp.2d 674, 680 (N.D.Ohio 1999) (“[T]he exception in § 14501(c)(2)(A) limits the authority of a state to delegate its regulatory authority over tow truck operators to local or municipal governments.”). Other courts have concluded that the exception applies to safety regulations enacted by political subdivisions if the state has delegated its safety regulatory authority to those subdivisions. See Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 775-76 (2d Cir.) (“49 U.S.C. § 14501(c)(2)(A) does not limit the authority of a state to delegate its towing regulatory authority to local or municipal governments.”), cert. denied, 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 140 (1999); Harris County Wrecker Owners v. City of Houston, 943 F.Supp. 711, 727 (S.D.Tex.1996) (“The court concludes that 49 U.S.C. § 14501(c)(2)(A) permits municipalities to enact safety regulations related to a price, route, or service of a tow truck if a State has redelegated its regulatory authority to its political subdivisions.”). Finally, assuming, arguendo, that § 14501(c)(2) is applicable to safety regulations adopted by political subdivisions of a state, there is the question of whether the State of Kansas has delegated its towing regulatory authority to counties and other political subdivisions in the state.
While I agree with and concur in the majority’s affirmance of the district court’s rulings on the geographic division policy, I would reverse the district court’s grant of summary judgment in favor of defendants on plaintiffs’ claim that the permit policy is preempted by § 14501(c)(1) and remand for further consideration of defendants’ argument that the permit policy is saved by the safety exception set forth in § 14501(c)(2)(A). For the same reasons, I would reverse and remand the district court’s denial of plaintiffs motion to preliminarily enjoin the permit policy.