RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0136P (6th Cir.)
File Name: 01a0136p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

FREDERICK W. TYRRELL,
     *Plaintiff-Appellant,*

     *v.*

NORFOLK SOUTHERN
RAILWAY COMPANY,
     *Defendant-Appellee.*

No. 99-4505

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 98-07690—David A. Katz, District Judge.

Argued: January 31, 2001

Decided and Filed: April 25, 2001

Before: NORRIS, SILER, and BRIGHT, Circuit Judges.[*]

—————————

**COUNSEL**

**ARGUED:** James K. Genden, TORSHEN, SPREYER, GARMISA & SLOBIG, Chicago, Illinois, for Appellant. James R. Knepp II, ROBISON, CURPHEY & O'CONNELL,

_____

[*] The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Toledo, Ohio, for Appellee.  Evelyn G. Kitay, SURFACE TRANSPORTATION BOARD, Washington, D.C., Michael E. Robinson, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, APPELLATE SECTION, Washington, D.C., for Amici Curiae. **ON BRIEF:**  James K. Genden, Steven P. Garmisa, TORSHEN, SPREYER, GARMISA & SLOBIG, Chicago, Illinois, Frank E. Van Bree, James L. Farina, HOEY, FARINA & DOWNES, Chicago, Illinois, for Appellant. James R. Knepp II, Thomas J. Antonini, ROBISON, CURPHEY & O'CONNELL, Toledo, Ohio, for Appellee. Evelyn G. Kitay, SURFACE TRANSPORTATION BOARD, Washington, D.C., Michael E. Robinson, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, APPELLATE SECTION, Washington, D.C., James Lacey O'Connell, LINDHORST & DREIDAME, Cincinnati, Ohio, for Amici Curiae.

--------

## OPINION

--------

SILER, Circuit Judge.   Plaintiff Frederick W. Tyrrell appeals the district court's grant of partial summary judgment to Defendant Norfolk Southern Railway Company.  The lower court held that under the Interstate Commerce Commission Termination Act ("ICCTA"), the Surface Transportation Board's ("STB") exclusive regulatory jurisdiction over rail construction preempts the Ohio track clearance regulation upon which Tyrrell based his negligence per se claim under the Federal Employers' Liability Act ("FELA").  Tyrrell argues that the district court erred as the Federal Railway Safety Act ("FRSA") is the proper statute for assessing whether the Ohio track requirement is preempted.  We **REVERSE** the district court's decision and **REMAND** for further proceedings in conformity with this opinion.

that FRSA negatively preempted the Ohio walkway regulation by its explicit decision not to enact such regulations.  *See id.* at 571. Drawing from this decision, Norfolk Southern argues that the FRA's decision to not issue regulations for rail bridge and trestle walkways covers the same subject as the Ohio track clearance regulation and thus negatively preempts it.  That conclusion is erroneous.  First, FRA has no rail safety regulation that substantially subsumes  the subject of track clearances.  *See Easterwood*, 507 U.S. at 664.  Second, while the railway correctly cites *Norfolk & W. Ry.* as controlling authority in determining negative preemption under FRSA, no evidence in this case demonstrates that the FRA considered track clearance requirements and explicitly decided that no regulation in the area was necessary.  *See Norfolk & W. Ry.*, 926 F.2d at 570-71.

As the Supreme Court has reiterated, *Easterwood* controls the determination of whether the FRA has issued regulations "covering the subject matter" of Ohio's track clearance regulation.  *See Norfolk S. Ry. v. Shanklin*, 529 U.S. 344, 352 (2000), *rev'g and remanding Shanklin v. Norfolk S. Ry.*, 173 F.3d 386 (6th Cir. 1999).  Currently, because no FRA regulation or action covers the subject matter of minimum track clearance, the Ohio regulation serves as a permissible gap filler in the federal rail safety scheme.  *See* 49 U.S.C. § 20106.

Therefore, Norfolk Southern was not entitled to summary judgment under Fed. R. Civ. P. 56(c).  We **REVERSE** the district court's grant of summary judgment to the railroad and **REMAND** the case for further proceedings consistent with this decision.

must determine whether the FRA has issued regulations "covering the same subject matter" addressed in Ohio's track clearance regulation. 49 U.S.C. § 20106. To prevail on a claim that federal regulations are preemptive, a party "must establish more than that they 'touch upon' or 'relate to'" the state regulation's subject matter. *Easterwood,* 507 U.S. at 664. Instead, "preemption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *Id.* (emphasis added).

In regard to the FRA's "coverage" of track clearance safety requirements, Norfolk Southern argues that the FRA preempted the enforcement of a similar California track clearance requirement based on a 1978 policy statement according to a 1986 letter from FRA's Chief Counsel to the Southern Pacific Transportation Company. The letter stated that "FRA has adopted general regulations (49 C.F.R. Part 213) that prescribe minimum safety requirements for railroad tracks subject to Federal jurisdiction. These requirements preempt the entire field of track safety standards."

The railroad's reliance on the FRA's 1986 letter fails to pass muster under *Easterwood.* The scope of FRSA preemption expressed in FRA's letter was rejected in *Southern Pac. Transp. Co. v. Pub. Util. Comm'n of Calif.,* 647 F. Supp. 1220 (N.D. Cal. 1986), *aff'd,* 820 F.2d 1111 (9th Cir. 1987) (per curiam). In that case, both the district court and the Ninth Circuit held that FRA could not rely on 43 C.F.R. Part 213's general structural requirements to preempt the California walkway rule, as these regulations do not cover track clearances. *See Southern Pac. Transp. Co.,* 647 F. Supp. at 1224-27; 820 F.2d at 1111.

In the alternative, the railroad argues that the Ohio track clearance regulation is negatively preempted based on *Norfolk & W. Ry. v. Pub. Util. Comm'n of Ohio*, 926 F.2d 567 (6th Cir. 1991). In that case, the FRA decided not to create federal regulations requiring walkways along rail bridges or trestles for rail workers. However, Ohio issued a similar regulation mandating walkways on rail bridges. *See id.* This court held

## I. BACKGROUND

Tyrrell worked as a trainman for Norfolk Southern at its railroad yard in Bellevue, Ohio. One night in 1998, he was walking between tracks No. 3 and 4 when a car traveling on track No. 3 struck him. As he fell, his right foot rolled under the car's wheels. As a result of his severe injuries, his lower right leg was amputated.

Tyrrell instituted an action against Norfolk Southern under the FELA, 45 U.S.C. § 51 *et seq.*, alleging that the railroad failed to provide him with a safe place to work by negligently and carelessly using an unreasonably dangerous track clearance in violation of state law. Norfolk Southern moved for partial summary judgment, contending that the Ohio track clearance regulation at issue was preempted under the ICCTA's jurisdiction provision for the STB, 49 U.S.C. § 10501(b). The district court granted the railroad's motion.

## II. DISCUSSION

This court reviews a grant of summary judgment *de novo*. *See CSX Transp., Inc. v. City of Plymouth*, 86 F.3d 626, 627 (6th Cir. 1996) (citing *City Mgmt. Corp. v. United States Chemical Co.*, 43 F.3d 244, 250 (6th Cir. 1994)). Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a matter of law, statutory construction issues are reviewed *de novo* on appeal. *See United States v. Davis*, 187 F.3d 528, 531 (6th Cir. 1999) (citation omitted).

Ohio Admin. Code 4901:3-1-04 requires that any new construction or reconstruction of main lines, passing tracks, and yard tracks involved in rail switching must provide at least 14 feet of clearance between the centers of adjacent and parallel tracks. Constructed after the promulgation of this requirement, the Bellevue rail yard has a track clearance of 13 feet and 9 inches. FELA provides that common railroad

carriers engaged in interstate commerce are liable for damages to employees who suffer injuries due to the negligence of a carrier's officers, agents, or employees or by reason of any defect or insufficiency in its cars, track, roadbed, or other equipment due to a carrier's negligence. *See* 45 U.S.C. §51. As Tyrrell's injuries arose from a workplace accident involving a track area that did not comply with Ohio Admin. Code 4901:3-1-04, he brought this FELA action.

This case presents a statutory construction question regarding two federal railroad statutes and their preemptive effect on Ohio's track clearance regulation. In its summary judgment analysis, the district court classified Ohio Admin. Code § 4901:3-1-04 as primarily a construction requirement and limited its analysis to the ICCTA's preemption provision, 49 U.S.C. § 10501(b), which provides the STB with exclusive jurisdiction to regulate rail carriers' construction and operation of rail switches, side tracks, and facilities. The trial court also stated that even if it assumed the regulation addressed workplace safety, the ICCTA remained the proper statute for analysis as "one of the express purposes" of the Act was to encourage "safe and suitable working conditions in the railroad industry" under 49 U.S.C. § 10101(11). On this basis, the district court held that the ICCTA preempted Ohio Admin. Code 4901:3-1-04 because its express preemption clause applies to state regulations impacting rail construction or rail safety.

In contrast, Tyrrell, along with the United States and the STB as amici curiae, construe the state regulation as one dealing with rail safety, thus requiring analysis under the FRSA's preemption provision, 49 U.S.C. § 20106, which provides the Federal Railroad Administration ("FRA") with the authority to regulate rail safety. For this case, the applicable preemption and saving clauses state that:

> Laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable. *A State may adopt or continue in force a law, regulation,*

While Ohio Admin. Code § 4901:3-1-04 references rail construction, its 14-foot track clearance requirement yields safety benefits for employees working along switching tracks. In addition, federal and state case law recognize that state track clearance provisions are designed to protect railroad workers by providing them with sufficient work space between tracks.[3] The Ohio Supreme Court also classifies this rail regulation as one dealing with rail safety. In *Baltimore & Ohio R.R. v. Pub. Util. Comm'n of Ohio*, 102 N.E.2d 246, 247 (Ohio 1951), it upheld the Public Utility Commission of Ohio's ("PUCO") authority under state law to issue regulations and orders "relating to the protection and safety of railroad employees" working in rail yards. Under this authority, the PUCO developed an initial minimum track clearance standard that was succeeded by Ohio Admin. Code 4901:3-4-04. As the Ohio regulation has a connection with rail safety based on its terms, the safety benefits of compliance, and its legally recognized purpose, FRSA provides the applicable standard for assessing federal preemption.

A debate over whether this type of railroad regulation is an historical function of the federal government or the States is unnecessary as the Supreme Court specifically held that a presumption against federal preemption is embodied in the saving clauses of 29 U.S.C. § 20106. *See Easterwood*, 507 U.S. at 665, 668. In assessing FRSA's preemptive effect, we

---

[3] *See Southern Pac. Transp. Co. v. Pub. Util. Comm'n of Cal.*, 647 F. Supp. 1220, 1222 (N.D. Cal. 1986), *aff'd,* 820 F.2d 1111 (9th Cir. 1987) (per curiam) (holding that a comparable California regulation was a safety provision based on its purpose); *Brown v. Cedar Rapids and Iowa City Ry.*, 650 F.2d 159, 163 (8th Cir. 1981) (characterizing track clearance regulations as part of a safety code); *United Transp. Union v. Dep't of Transp.*, 355 N.W. 2d 683, 685 (Mich. Ct. App. 1984) (ruling that Michigan's minimum railroad track clearance statute provided for railroad worker safety); *Reading Co. v. Pennsylvania Pub. Util. Comm'n*, 146 A.2d 746, 748 (Pa. Super. Ct.1958) (stating that the duty to provide safe and reasonable facilities for rail workers included "adequate clearances between cars on parallel track, for the physical safety of employees whose duty took them there").

In contrast, Norfolk Southern's skewed application of *Plymouth II* would arbitrarily pigeon-hole preemption analysis of state rail law under the ICCTA. In *Plymouth II*, the court recognized that the state law at issue dealt with rail safety and that the goal of Michigan's argument for non-preemption under the ICCTA was to save its statute from preemption under the FRSA. *See Plymouth II*, 92 F. Supp. 2d at 649, 658. *Plymouth II* does not state that ICCTA preemption precludes non-preemption under FRSA. Based on the federal railway statutes, the STB and FRA's jurisdictional management, and the resulting regulatory systems, Congress vested the FRA with primary authority over national rail safety policy and assigned the STB the duty to encourage "safe and suitable working conditions" for railway employees through its assessment of individual railway proposals subject to its authority. As statutory "repeals by implication are disfavored" and there is no positive repugnancy between FRSA and the ICCTA's jurisdictional provisions, this statutory construction properly reflects Congress's purpose. *Blanchette v. Connecticut General Ins. Corp.*, 419 U.S. 102, 133-34 (1974) (citation omitted).

Most critically, by focusing narrowly on the term "construction" in 49 U.S.C. § 10501(b) and the Ohio regulation, the district court failed to properly assess whether the Ohio track clearance standard was related to rail safety and thus required preemption analysis under FRSA. *See* 49 U.S.C. § 20106. According to *CSX Transp., Inc. v. City of Plymouth*, 86 F.3d 626, 629 (6th Cir. 1996) (hereinafter *Plymouth I*), though a state regulation may have an alternative purpose and does not reference railroad safety, it may be "'related to' railroad safety because [it] has a 'connection with' railroad safety." *Id.* To determine whether a regulation has a "connection with" rail safety, we "must necessarily look at [its] terms ("...") and what the ordinance requires in terms of compliance." *Id.* Thus, a state regulation may relate to railroad safety based on the potential safety aspects that arise from complying with the regulation. *Id.*

*or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the state requirement.*

49 U.S.C. § 20106 (emphasis added). Tyrrell further argues that the district court's broad interpretation of the ICCTA's jurisdiction over rail construction under 49 U.S.C. § 10501(b) repeals by implication the current federal and state rail safety regulatory system developed under FRSA. This concern is shared by the United States and the STB.

In response, Norfolk Southern argues that the district court's decision does not stand for the proposition that the ICCTA preempts FRSA or any other federal statute dealing with rail safety. Rather, it simply asserts the ICCTA's broad-based authority to preempt state construction regulations like Ohio Admin. Code 4901:3-4-04.[1] In addition, Norfolk Southern argues that the core preemption question is not what the stated purpose of the state rail law is, but whether its effect falls within the ICCTA's broad jurisdiction. For support, it cites *CSX Transp., Inc. v. City of Plymouth*, 92 F. Supp. 2d 643 (E.D. Mich. 2000) (notice of appeal filed May 12, 2000) (hereinafter *Plymouth II*). In *Plymouth II*, the district court examined a Michigan train speed regulation under the ICCTA and the FRSA. While the district court ruled that FRSA preempted the state regulation to the extent it regulated rail safety factors like train speed, train length and air brake performance, it also held that § 10501(b)'s construction language preempted the state regulation as it required railroads to make substantial capital improvements.

---

[1] Citing *City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998), *cert. denied*, 527 U.S. 1022 (1999) (finding that § 10501(b)(2) expresses Congress's broad intent to preempt state regulatory authority over railroad operations); *Soo Line R.R. v. City of Minneapolis*, 38 F. Supp. 2d 1096 (D. Minn. 1998) (holding the ICCTA preempts local regulation pertaining to the destruction of historic rail yard buildings); *Burlington N. Santa Fe Corp. v. Anderson*, 959 F. Supp. 1288 (D. Mont. 1997) (holding that the ICCTA preempts state law authorizing a state agency to exercise regulatory authority over railroad activities).

*See Plymouth II,* 92 F. Supp. 2d at 658-59. Norfolk Southern thus interprets *Plymouth II* to mean that the Ohio track clearance regulation is preempted because it affects rail construction and the ICCTA assigns the STB exclusive jurisdiction over rail construction.

In its amicus brief on behalf of the railway, the Association of American Railroads ("AAR") also emphasizes that both the ICCTA and FRSA manifest an express congressional intent to preempt state law to establish national uniformity. As the STB can assert rail safety authority, the AAR argues that the district court did not expand the STB's jurisdiction or negate FRA's plenary rail safety authority. Rather, the lower court correctly determined that the ICCTA preempted a state law that encroached on its statutory authority.

Under the Supremacy Clause of the Constitution, federal law preempts conflicting state law. However, there is a presumption against the supplanting of historic state police powers by the federal government unless preemption is "the clear and manifest purpose of Congress." *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993); *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). In expressing its preemptive intent, Congress can supercede state law through explicit statutory language or implicitly through the statute's structure and purpose. *See Cipollone*, 505 U.S. at 516. As this case presents two federal statutes containing explicit preemption clauses, "the task of statutory construction must in the first instance focus on the plain wording of the clause[s], which necessarily contain[] the best evidence of Congress's pre-emptive intent." *Easterwood*, 507 U.S. at 664. Although the analysis of a preemption clause's scope begins with its text, "our interpretation of that language does not occur in a contextual vacuum." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996). The "ultimate touchstone" of preemptive effect is Congress's purpose. *See id.* at 485. In order to develop "'a fair understanding of congressional purpose,'" a reviewing court must study the preemption language, the surrounding statutory structure and regulatory scheme, and how Congress intended "to affect

business, consumers, and the law" through these combined factors. *Id.* at 485-86 (citing *Cipollone*, 505 U.S. at 530 n.27 (opinion of Stevens, J.)).

Unfortunately in ruling on the motion for summary judgment, the district court did not have the benefit of federal agency input regarding the jurisdictional relationship between the ICCTA and FRSA. As a result of this critical handicap, it did not achieve a "reasoned understanding of the way in which Congress intended the [ICCTA] and its surrounding regulatory scheme" to affect FRSA and its regulations. *Id.* at 486. Rather, the district court's decision erroneously preempts state rail safety law that is saved under FRSA if it tangentially touches upon an economic area regulated under the ICCTA. As a result, this interpretation of the ICCTA implicitly repeals FRSA's first saving clause.

While the STB must adhere to federal policies encouraging "safe and suitable working conditions in the railroad industry," the ICCTA and its legislative history contain no evidence that Congress intended for the STB to supplant the FRA's authority over rail safety. 49 U.S.C. § 10101(11). Rather, the agencies' complementary exercise of their statutory authority accurately reflects Congress's intent for the ICCTA and FRSA to be construed *in pari materia.* For example, while recognizing their joint responsibility for promoting rail safety in their 1998 Safety Integration Plan rulemaking, the FRA exercised primary authority over rail safety matters under 49 U.S.C. § 20101 *et seq.*, while the STB handled economic regulation and environmental impact assessment.[2]

---

[2] *See* Regulations on Safety Integration Plans Governing Railroad Consolidations, Mergers, Acquisitions of Control, and Start Up Operations; and Procedures for Surface Transportation Board Consideration of Safety Integration Plans in Cases Involving Railroad Consolidations, Mergers, and Acquisitions of Control, STB Ex Parte No. 574, FRA Docket No. SIP-1, Notice No. 1, 63 Fed. Reg. 72,225 (Dec. 31, 1998).