Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued February 13, 2004       Decided April 20, 2004

No. 03-1086

BOSTON AND MAINE CORPORATION *ET AL.*,
PETITIONERS

v.

SURFACE TRANSPORTATION BOARD AND
UNITED STATES OF AMERICA,
RESPONDENTS

NATIONAL RAILROAD PASSENGER CORPORATION AND
NORTHERN NEW ENGLAND PASSENGER RAIL AUTHORITY,
INTERVENORS

————

On Petition for Review of Orders of the
Surface Transportation Board

————

*Eric L. Hirschhorn* argued the cause for the petitioners. *Robert B. Culliford* was on brief.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Jamie P. Rennert*, Attorney, Surface Transportation Board, argued the cause for the respondent. *Robert H. Pate III*, Assistant Attorney General, United States Department of Justice, *Ellen D. Hanson*, Deputy General Counsel, *Craig M. Keats*, Associate General Counsel, Surface Transportation Board, and *Robert B. Nicholson* and *John P. Fonte*, Attorneys, United States Department of Justice, were on brief.

*Christopher T. Handman* argued the cause for the intervenors. *Nathaniel M. Rosenblatt*, *George W. Mayo, Jr.* and *Eric Von Salzen* were on brief.

Before: GINSBURG, *Chief Judge*, HENDERSON, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The petitioners, subsidiaries of Guilford Transportation Industries, Inc., seek review of the decision by the Surface Transportation Board (STB or Board) to authorize the National Railroad Passenger Corporation (Amtrak) to operate trains at speeds of up to 79 mph over a 78–mile rail line owned by Guilford. Guilford claims the STB orders usurp the jurisdiction of the Federal Railroad Administration (FRA) because they limit the safety measures Guilford may implement on the line. Because Guilford has demonstrated no injury-in-fact, we conclude that it lacks standing and that the court therefore lacks subject-matter jurisdiction over this action.

## I.

The track at issue runs between Plaistow, New Hampshire and Portland, Maine and constitutes a portion of Amtrak's proposed passenger route between Boston and Portland. In the mid–1990s Guilford, Amtrak and the Northern New England Passenger Rail Authority[1] negotiated the terms for

---

[1] The Northern New England Passenger Rail Authority is "a political body and corporation established by the State of Maine to promote rail passenger service between points in Maine and points within and outside of Maine." Nat'l R.R. Passenger Corp.—Peti-

Amtrak's use of the line. On March 19, 1997 Amtrak filed an application with the STB, pursuant to 49 U.S.C. § 24308(a)(2),[2] to set certain contractual terms on which the parties had been unable to agree. The STB resolved the disputed issues and set the terms and compensation for Amtrak's access to Guilford's rail system. Application of the National Railroad Passenger Corp. Under 49 U.S.C. § 24309(A), STB Finance Docket No. 33381, Dec. No. 28270 (May 28, 1998). Under the Board's decision Amtrak was to operate trains over Guilford's track at a maximum speed of 60 mph as the parties had agreed.

On December 11, 1998 Amtrak filed a petition to amend the agreement to allow trains to operate at speeds up to 79 mph. The Board, after consulting the FRA and reviewing the latter's analysis, determined that installation of 115–pound continuous welded rail on the line was adequate for safe operation of trains at speeds up to 79 mph "provided that the line is rehabilitated to and maintained at the levels indicated in the FRA's analysis." Nat'l R.R. Passenger Corp.—Petition for Declaratory Order—Weight of Rail, STB Finance Docket No. 33697, Dec. No. 30426, at 1 (Oct. 21, 1999) (*Weight of Rail I*).

---

tion For Declaratory Order—Weight of Rail, STB Finance Docket No. 33697, Dec. No. 32705, at 1 n.2 (Jan. 31, 2003).

[2] Section 24308 provides:

(a) General authority.—(1) Amtrak may make an agreement with a rail carrier or regional transportation authority to use facilities of, and have services provided by, the carrier or authority under terms on which the parties agree. The terms shall include a penalty for untimely performance. (2)(A) If the parties cannot agree and if the Interstate Commerce Commission finds it necessary to carry out this part, the Commission shall—

(i) order that the facilities be made available and the services provided to Amtrak; and

(ii) prescribe reasonable terms and compensation for using the facilities and providing the services.

After the parties reached an impasse over how, when and how often to test the track for compliance with FRA safety standards, Amtrak filed a motion for clarification, proposing specific testing equipment and a specified testing schedule. The Board, after once again soliciting comment from the FRA, decided it "agree[d] with FRA that Amtrak's proposed approach is both reasonable and practical." Nat'l R.R. Passenger Corp.—Petition for Declaratory Order—Weight of Rail, STB Finance Docket No. 33697, Dec. No. 31731, at 5 (June 28, 2001) (*Weight of Rail II*). Accordingly, the Board ordered that "testing in the manner described by Amtrak . . . should be conducted soon after rehabilitation of the line is completed" and that, if the testing demonstrated the track complied with the requirements set out in *Weight of Rail I*, "then no further track modulus testing will be required, provided that the line is maintained to FRA Class 4 standards, the line is subject to routine FRA-mandated track safety inspections, and the line is periodically inspected by a track geometry car, as described by Amtrak." *Id.* at 7.

Although subsequent testing showed the rail met the requirements of *Weight of Rail II*, Guilford refused to accept the test results or to permit Amtrak to operate at the authorized speed. Consequently, Amtrak filed a petition for further clarification requesting that the Board order Guilford to permit Amtrak to operate its trains at speeds up to 79 mph. The STB, after reviewing two sets of comments submitted by the FRA, ordered:

> Subject to FRA's track safety *requirements*, Guilford must allow Amtrak to operate over the line at issue at speeds of up to 79 mph.

Nat'l R.R. Passenger Corp.—Petition For Declaratory Order—Weight of Rail, STB Finance Docket No. 33697, Dec. No. 33697, at 5 (Jan. 31, 2003) (emphasis added) (*Weight of Rail III*). The STB further ordered that the proceeding be discontinued.

On February 20, 2003 Guilford filed a petition for reconsideration asking the STB for "clarification that nothing in *Weight of Rail III* is intended to render the [FRA's] regulato-

ry framework for railroad safety inapplicable to Amtrak's operation over Guilford's line . . . and that FRA, rather than this Board, has jurisdiction over any safety-related issues that might arise in respect of such operation." The STB denied the petition, concluding that its "decision in Weight of Rail III was clear." Nat'l R.R. Passenger Corp.—Petition For Declaratory Order—Weight of Rail, STB Finance Docket No. 33697, Dec. No. 33412, at 1 (Mar. 19, 2003).

Guilford then filed a petition for review of *Weight of Rail III* and the denial of its reconsideration petition.

## II.

The Congress has conferred on this court jurisdiction to "enjoin, set aside, suspend (in whole or in part), or to determine the validity" of a final order of the STB upon timely filing of a petition of review by "[a]ny party aggrieved by the final order." 28 U.S.C.A. §§ 2321, 2342, 2344. Because Guilford has not demonstrated any harm it suffered as a result of the challenged orders, we conclude Guilford is not an "aggrieved" party and therefore lacks statutory standing to bring this action.

Guilford claims it was injured because the Board's decision in *Weight of Rail III* "limited the applicability of FRA's track safety regulatory framework to Amtrak's use of the [Plaistow to Portland line]." Pet'r's Br. at 20. By subjecting the line only to "FRA's track safety *requirements*," *Weight of Rail III* at 5 (emphasis added), Guilford contends, the decision prevents Guilford from taking additional safety measures—beyond the minimum requirements—as the FRA encourages track operators to do. *See* FRA Track Safety Standards Compliance Manual § 213 (Jan. 1, 2002) ("[T]he rules prescribed herein are minimum requirements for safety and the railroads are both encouraged and expected to maintain higher standards."). It is true, as Guilford claims, that primary jurisdiction over railroad safety belongs to the FRA, not the STB. *See* 49 U.S.C. § 103(c) ("The [FRA] Administrator shall carry out—(1) duties and powers related to railroad safety vested in the Secretary [of Transportation]. . . .");

*Tyrrell v. Norfolk S. Ry. Co.*, 248 F.3d 517, 523 (6th Cir. 2001) (concluding FRA's primary jurisdiction over safety matters survives STB's creation by Interstate Commerce Commission Termination Act[3]). Guildford's claimed injury, however, is a will-o-the-wisp. As the Board pointed out in its denial of reconsideration, *Weight of Rail III* expressly subjected Amtrak's use of the line to "FRA's safety jurisdiction," anticipating that "FRA will maintain oversight to the extent safety issues are concerned." *Weight of Rail III* at 1, 4. The Board's express recognition of FRA's primary and continuing jurisdiction over safety belies Guilford's reading of *Weight of Rail III*. In that decision, as throughout the proceeding below, the Board properly deferred to the expertise and jurisdiction of the FRA over matters relating to safety.

Because Guilford has not demonstrated that it suffered injury as a consequence of the Board's decision, we conclude that it is not a "party aggrieved by the final order" of the Board under 28 U.S.C. § 2344 and that we therefore lack jurisdiction to review the Board's order. *Cf. Pub. Utility Dist. No. 1 of Snohomish County, Wash. v. FERC*, 272 F.3d 607, 617 (D.C. Cir. 2001) (construing challenged order as inflicting no injury on petitioners so they were not "aggrieved" parties entitled under 16 U.S.C. § 825*l* to seek review of order). Accordingly, the petition for review is

*Dismissed.*

---

[3] The Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104–88, 109 Stat. 803, abolished the Interstate Commerce Commission and established the STB in its stead.