**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 11, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT
_____

BNSF RAILWAY COMPANY, a
Delaware corporation,

     Plaintiff - Appellee,

v.

TODD HIETT, in his capacity as Chairman
of the Oklahoma Corporation Commission;
BOB ANTHONY, in his capacity as Vice
Chairman of the Oklahoma Corporation
Commission; DANA MURPHY, in her
capacity as Commissioner of the Oklahoma
Corporation Commission,

     Defendants - Appellants,

and

CITY OF EDMOND, an Oklahoma
municipal corporation; CITY OF DAVIS,
an Oklahoma municipal corporation,

     Defendants,

and

MIKE HUNTER, in his official capacity as
Attorney General of the State of Oklahoma,

     Intervenor Defendant - Appellant.

_____

BNSF RAILWAY COMPANY, a
Delaware corporation,

No. 21-6000

Plaintiff - Appellee,

v.

CITY OF DAVIS, an Oklahoma municipal corporation; CITY OF EDMOND, an Oklahoma municipal corporation,

Defendants - Appellants,

TODD HIETT, in his capacity as Chairman of the Oklahoma Corporation Commission; BOB ANTHONY, in his capacity as Vice Chairman of the Oklahoma Corporation Commission; DANA MURPHY, in her capacity as Commissioner of the Oklahoma Corporation Commission,

Defendants,

and

MIKE HUNTER, in his official capacity as Attorney General of the State of Oklahoma,

Intervenor Defendant.

No. 21-6005

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:19-CV-00769-G)**

_____

Bryan Cleveland, Assistant Solicitor General (Mike Hunter, Attorney General of Oklahoma, and Mithun Mansinghani, Solicitor General with him on the briefs), Oklahoma City, Oklahoma for Defendants-Appellants.

R. Richard Love, III, Conner & Winters, LLP (C. Austin Birnie and J. Dillon Curran with him on the brief), Tulsa, Oklahoma for Plaintiff-Appellee.

_____

2

Before **MATHESON**, **PHILLIPS**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

Congress enacted the Interstate Commerce Commission Termination Act

("ICCTA") to establish an exclusive federal scheme of economic regulation for

railroad transportation.  The ICCTA created the Surface Transportation Board

("STB" or the "Board") and vests it with exclusive jurisdiction over railroad

operations.  49 U.S.C. § 10501(b).  Meanwhile, the Oklahoma legislature passed the

Blocked Crossing Statute, which fines railroad operators for occupying grade, or

street-level, crossings for more than ten minutes.  Municipal authorities in Oklahoma

fined Plaintiff BNSF for violating its Blocked Crossing Statute—setting up a

preemption challenge between the ICCTA and the Blocked Crossing Statute.  But

Defendants argue the Federal Railroad Safety Act ("FRSA")—not the ICCTA—

applies to Oklahoma's statute and does not preempt it.  The district court held that

the ICCTA preempts Oklahoma's Blocked Crossing Statute because it regulates

railroad operations.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Oklahoma's Blocked Crossing Statute provides that "no railcar shall be

brought to rest in a position which blocks vehicular traffic at a railroad intersection

with a public highway or street for longer than ten (10) minutes."  Okla. Stat. Ann.

tit. 66, § 190(A).

3

Plaintiff operates interstate trains nationally, including throughout 952 route miles in Oklahoma. Sixteen days after the Blocked Crossing Statute took effect, one of Plaintiff's trains occupied the side track in Davis, Oklahoma, for 38 minutes so that another train could pass on the main line.[1] While Plaintiff's train occupied the side track, it blocked at least one grade crossing. A police officer cited Plaintiff for violating the Blocked Crossing Statute.

The next day, in Edmond, Oklahoma, one of Plaintiff's trains again occupied the side track for 80 minutes so that two other trains could pass. That train also blocked at least one grade crossing. And 12 days later, one of Plaintiff's trains blocked a crossing for a third time while it stopped on the side track in Edmond for 37 minutes to let another train pass. On both occasions, a police officer cited Plaintiff for violating the Blocked Crossing Statute. The City of Edmond and City of Davis each filed complaints against Plaintiff before the Oklahoma Corporation Commission ("OCC") to enforce the citations. The OCC secretary issued a citation and notice of hearing.

Before that hearing took place, Plaintiff sued the City of Edmond, City of Davis, OCC Chairman Todd Hiett, OCC Vice-Chairman Bob Anthony, and OCC Commissioner Dana Murphy in federal court, asserting that the ICCTA, 49 U.S.C.

---

[1] "Side tracks are used to park a train going one direction on a main line while a train going the opposite direction passes. They can also be used as a detour to circumvent places on the main line where the tracks become unusable due to washouts, accidents, maintenance, etc." Friberg v. Kan. City S. Ry. Co., 267 F.3d 439, 440 n.1 (5th Cir. 2001).

§§ 10101 et seq., and the FRSA, 49 U.S.C. §§ 20101 et seq., preempt the Blocked Crossing Statute. Plaintiff sought a declaratory judgment and preliminary and permanent injunctions. The Oklahoma Attorney General intervened. On cross motions for summary judgment—granting Plaintiff's and denying Defendants'—the district court declined to consider the Blocked Crossing Statute exclusively under the FRSA, determined the ICCTA expressly preempts the Blocked Crossing Statute, and permanently enjoined Defendants from enforcing it. Defendants appeal.

## II.

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court." US Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1324 (10th Cir. 2010) (citation omitted). "In doing so, we consider the evidence in the light most favorable to the non-moving party." Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 994 (10th Cir. 2019) (citation and internal quotation marks omitted). "A party is entitled to summary judgment if there is no genuine dispute as to any material fact." In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig., 960 F.3d 1210, 1224 (10th Cir. 2020) (citation and internal quotation marks omitted). "In conducting this analysis, we engage in de novo review of all the district court's legal conclusions." Id. (citation and internal quotation marks omitted). "Thus, we ordinarily consider pre[-]emption as a legal issue subject to de novo review." Id. (citation omitted).

## III.

"The Supremacy Clause establishes that federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary

5

notwithstanding.'" PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011) (quoting U.S. Const., art. VI, cl. 2). Federal law preempts state law under the Supremacy Clause in three circumstances. Eng. v. Gen. Elec. Co., 496 U.S. 72, 78 (1990). First, Congress can explicitly define the preemptive scope of its enactments. Id. Second, absent explicit statutory language, federal law preempts state law where state law regulates conduct in a field that Congress intended the federal government to occupy exclusively. Id. at 79. And third, federal law preempts state law when they conflict. Id. But Congress's purpose matters the most in every preemption case. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). When a statute contains an express preemption provision, that provision's "plain wording" controls because it "necessarily contains the best evidence of Congress' pre-emptive intent." Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016) (citation omitted).

Congress passed the ICCTA "to establish an exclusive Federal scheme of economic regulation and deregulation for railroad transportation." Emerson v. Kan. City S. Ry. Co., 503 F.3d 1126, 1132 (10th Cir. 2007).[2] The ICCTA provides that the STB has exclusive jurisdiction over transportation by rail carriers and the operation of tracks or facilities, including side tracks, even if the tracks are located in one state. 49 U.S.C.

---

[2] "Although States retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive. Any other construction would undermine the uniformity of Federal standards and risk the balkanization and subversion of the Federal scheme of minimal regulation for this intrinsically interstate form of transportation." Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444, 452 (D.C. Cir. 2010) (quoting H.R. Rep. No. 104–311, at 96 (1995), *as reprinted in* 1995 U.S.C.C.A.N. at 808).

§ 10501(b).  The plain language is clear: the STB has exclusive jurisdiction over the operation of side tracks in Oklahoma.  Because the ICCTA is unambiguous, we need not look outside it to divine Congress's intent.

The Blocked Crossing Statute regulates how long a rail carrier may block, or occupy, a grade crossing before municipal authorities may fine the rail carrier.[3]  But many factors determine the time that a train will block a grade crossing, including the train's speed and length, whether the side track intersects the grade crossing, when a railroad schedules a train to pass, and the time required to comply with federally mandated tests and procedures.  Thus, "[r]egulating the time a train can occupy a rail crossing impacts . . . the way a railroad operates its trains, with concomitant economic ramifications . . . ."  Friberg, 267 F.3d at 443.  In Friberg, the Fifth Circuit—the only other circuit to address whether the ICCTA preempts a state's blocked-crossing statute—held the ICCTA preempted the Texas Anti-Blocking Statute because "[n]othing in the ICCTA otherwise provides authority for a state to impose operating limitations on a railroad," or regulate "a railroad's economic decisions."  Id. at 444.  We previously approved Friberg's reasoning when we relied on it to support our conclusion of ICCTA non-preemption.  See Emerson, 503 F.3d at 1132 ("Though the courts in Friberg and Auburn concluded that the state laws in question were preempted, their reasoning supports our conclusion of non-preemption.").  Thus, while Oklahoma's Blocked Crossing Statute states it is "for the safety and welfare of the people," Okla. Stat. Ann. tit.

---

[3] The parties do not dispute that BNSF is a rail carrier.

7

66, § 190(A), it too effectively regulates rail operations—a task the ICCTA reserves for the STB.  So, the ICCTA, by its plain language, preempts Oklahoma's Blocked Crossing Statute.

Moreover, the STB's own understanding of its authority under the ICCTA supports our plain-language determination.  "As the agency authorized by Congress to administer the [ICCTA], the [STB] is uniquely qualified to determine whether state law should be preempted by the [ICCTA]."  Emerson, 503 F.3d at 1130 (citations omitted); see also R.R. Ventures, Inc. v. Surface Transp. Bd., 299 F.3d 523, 548 (6th Cir. 2002) ("[T]his Court must give considerable weight and due deference to the [STB's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable." (citation and internal quotation marks omitted)).  Despite hearing argument that the ICCTA "only preempts direct 'economic' regulation of railroads, and not a state or local measure aimed at protecting its residents," the STB concluded that the scope of  ICCTA preemption "is broader than just direct economic regulation of railroads" and that states and municipalities "cannot take an action that would have the effect of foreclosing or unduly restricting a railroad's ability to conduct its operations or otherwise unreasonably burden interstate commerce."  CSX Transp., Inc., Fed. Carr. Cas. (CCH) ¶ 37186, 2005 WL 584026, at *7−8 (STB Mar. 14, 2005).  Because the ICCTA preempts the Blocked Crossing Statute, we need not consider whether the FRSA does too.

Still, Defendants argue the district court incorrectly applied the ICCTA to the Blocked Crossing Statute because "the safety issues posed by blocked crossings are

8

within the authority of the [Federal Railroad Administration ('FRA')]," the agency

administering the FRSA, and governed by the FRSA's preemption clause.  Defendants

explain that courts must construe the STB's jurisdiction under the ICCTA *in pari*

*materia*—meaning, construed together— with the FRA's, "cognizant of the presumption

against implied repeal of the FRSA."  And Defendants contend a split exists about

ICCTA interpretation, with the Second, Sixth, Eighth, Ninth, and D.C. Circuits

construing it together with the FRSA so that rail-safety issues fall under the FRSA, and

the Fifth Circuit alone concluding the ICCTA subsumes the FRSA.[4]  Defendants

correctly state that the FRSA applies to rail-safety issues, but we need not "reconcile the

ICCTA's interaction with . . . the FRSA," because the Blocked Crossing Statute concerns

---

[4] The Fifth Circuit is the only circuit to consider whether the ICCTA preempts a state's blocked-crossing statute—no split exists with respect to this issue.  See Friberg, 267 F.3d at 444; Elam v. Kan. City S. Ry. Co., 635 F.3d 796, 807 (5th Cir. 2011).  The cases Defendants cite concern other issues.  See Island Park, LLC v. CSX Transp., 559 F.3d 96, 98−99 (2d Cir. 2009) (private rail-crossing closure order); Tyrrell v. Norfolk S. Ry. Co., 248 F.3d 517, 520−21 (6th Cir. 2001) (state track-clearance requirement); Iowa, Chi. & E. R.R. Corp. v. Wash. Cnty., 384 F.3d 557, 558 & n.1 (8th Cir. 2004) (state statute requiring railroads to construct and maintain bridges); Swinomish Indian Tribal Cmty. v. BNSF Ry. Co., 951 F.3d 1142, 1161 (9th Cir. 2020) (right-of-way easement agreement issued under the Indian Right of Way Act); Bos. & Me. Corp. v. Surface Transp. Bd., 364 F.3d 318, 319 (D.C. Cir. 2004) (STB order on train speed limit).

Defendants argue it does not matter that these cases do not address blocked crossings because "the *legal* question of whether the ICCTA implicitly repeals the FRSA" should not "vary depending on the *facts* being analyzed."  But Defendants mistake the relevant legal question.  When approaching a railroad statutory-preemption issue, a court must first ask whether the statute at issue concerns rail safety.  If the answer is no, that statute cannot fall under the FRSA's purview, and the court need not analyze whether the FRSA preempts it.  Thus, the statute's subject-matter is important because it informs whether the statute concerns rail safety.  Here, the Blocked Crossing Statute does not concern rail safety, so we need not address FRSA preemption.

*public* safety, not rail safety, and regulates railroad operations.  Thus, the district court properly analyzed whether the ICCTA, and not the FRSA, preempts it.

Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents."  Henning v. Union Pac. R. Co., 530 F.3d 1206, 1211 (10th Cir. 2008) (quoting 49 U.S.C. § 20101).  It "grants the Secretary of Transportation the authority to 'prescribe regulations and issue orders for every area of railroad safety.'"  Id. (quoting 49 U.S.C. § 20103(a)). And it requires the Secretary to "maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem and measures to protect pedestrians in densely populated areas along railroad rights of way."  49 U.S.C. § 20134(a).  But so that "[l]aws, regulations, and orders related to railroad safety" are "nationally uniform," the FRSA preempts a state's "law, regulation, or order *related to railroad safety*" when the Secretary of Transportation "prescribes a regulation or issues an order covering the subject matter of the State requirement."  49 U.S.C. § 20106 (emphasis added).  Circuits examining the relationship between the ICCTA and FRSA "have concluded that the federal statutory scheme places principal federal regulatory authority for rail safety with the [FRA], not the STB."  Island Park, LLC, 559 F.3d at 107.  Thus, the "FRSA provides the appropriate basis for analyzing whether a state law, regulation or order affecting rail safety is pre-empted by federal law."  Id. (citing Bos. & Me. Corp., 364 F.3d at 321; Iowa, Chi. & E. R.R. Corp., 384 F.3d at 561; Tyrrell, 248 F.3d at 523).  And the STB agrees with those circuits' interpretation of its authority, stating that ICCTA preemption "applies only to non-safety railroad regulation and that Congress intended to retain the

well settled safety authority of the FRA and the states under [the] FRSA when it enacted [the ICCTA]." In re Waneck, No. FD 36167, 2018 WL 5723286, at *5 n.6 (S.T.B. Oct. 31, 2018). Though "in rare cases," the STB clarified, "both FRSA and ICCTA preemption may apply." Id. at *7. But we need not examine the interplay between the ICCTA and the FRSA because the Blocked Crossing Statute does not concern rail safety.

The Blocked Crossing Statute recites that "it is immediately necessary for the safety and welfare of the people," before prohibiting any railcar from "block[ing] vehicular traffic at a railroad intersection with a public highway or street for longer than ten (10) minutes." Okla. Stat. Ann. tit. 66, § 190(A). Defendants explain that blocked crossings in Oklahoma have "forced a paramedic . . . to jump between rail cars of a stopped train to reach a patient in time," delayed firefighters and paramedics' response times generally, and caused Oklahomans to engage in risky behavior to avoid blocked crossings. Defendants argue the Blocked Crossing Statute responds to these safety concerns and therefore falls under the FRSA. While emergency responders' delayed ability to reach people on the other side of a blocked crossing and risky road-blockage-induced behaviors pose legitimate safety issues, they do not concern any "hazard to the railroad system or its participants." People v. Burlington N. Santa Fe R.R., 148 Cal. Rptr. 3d 243, 252 (Cal. Ct. App. 2012). Rather, they are local public safety issues—not rail safety issues. See id. at 253 ("Instead, the People assert only that blocked rail crossings will delay emergency vehicles. This is a legitimate safety concern for those members of the public who cannot be reached by emergency vehicles located on the opposite side of blocked rail crossings, but it is not a 'rail safety' concern.").

11

Defendants urge this Court to "agree with the Eighth Circuit's interpretation of rail safety in the FRSA" because "it is more consistent with longstanding interpretations of the safety jurisdiction conferred under the FRSA." In Iowa, Chicago & Eastern Railroad Corporation, Washington County sought to require the Iowa, Chicago & Eastern Railroad Corporation ("IC&E") to replace four bridges on the interstate rail line at IC&E's expense under an Iowa statute. 384 F.3d at 558. Two of the bridges carried the rail line over county highways and had "severely deficient vertical clearances for highway traffic," and the other two bridges carried the highway over the rail line—one had a sharp crest, and a fire destroyed the other. Id. IC&E argued that the ICCTA preempted Iowa's statute and FRSA preemption did not apply because the County sought to replace the bridges for highway improvement—not rail safety. Id. at 560. But the Eighth Circuit found that argument unpersuasive because the "reasons for replacing the bridges . . . clearly include[d] a safety component[,] . . . albeit a highway safety issue." Id. And, in dicta, that court rejected any argument that "'rail safety' for the purposes of FRSA preemption does not include the highway safety risks created at rail crossings," after recognizing a long history of federal-state cooperation on highway safety. Id.

But the Eighth Circuit held only that, on the record before it, the railroad failed to establish that the ICCTA preempted state administrative proceedings seeking to require the railroad to replace the four bridges. Id. at 561. It did not make a determination on the FRSA. And "deteriorating or inadequate railway-highway bridges," id. at 560, may create potential hazards to the railroad system or its participants, implicating rail safety. These concerns are not at issue here—the Blocked Crossing Statute does not seek to

12

regulate the condition of grade crossings but the movement of trains through them. Its primary directive prohibits the time a train can block a grade crossing. "Indeed, the statute has no application except with respect to the operation of railroads at rail crossings." Elam, 635 F.3d at 807. Thus, the district court properly analyzed whether the ICCTA, and not the FRSA, preempts the Blocked Crossing Statute and concluded that it does.

AFFIRMED.