**CSX TRANSPORTATION, INC., Plaintiff,**

v.

**CITY OF MITCHELL, INDIANA, Defendant.**

**No. NA 97–98–C B/G.**

United States District Court, S.D. Indiana, New Albany Division.

Dec. 30, 1999.

David R. Monohan, Woodward Hobson & Fulton, Louisville, KY, for Plaintiff.

Terry G. Duga, Deputy Attorney General, Indianapolis, Alan R. Miller, Rudy & Miller, New Albany, NY, for Defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW and SUMMARY JUDGMENT

BARKER, Chief Judge.

The Court hereby enters its Findings of Fact and Conclusions of Law and Summary Judgment in favor of Plaintiff, CSX Transportation, Inc. ("CSXT"), whose October 6, 1999, motion for such relief has gone unopposed by the Defendant and, as a matter of fact and law, is entitled to be granted.[1]

### FINDINGS OF FACT

1. CSXT is a "railroad" as that term is defined in the Federal Safety Authorization Act of 1994, 49 U.S.C. § 20101, et seq.

2. Due to the configuration of CSXT's rail operations within the municipal confines of Defendant, City of Mitchell, Indiana ("Mitchell"), and due also to CSXT's required compliance with manda-

---

1. The State of Indiana has appeared in this action as Amicus Curiae, but because CSXT has not brought a facial attack on the constitutionality of the Indiana statute implicated in this dispute, the State also has filed no response to Plaintiff's Motion for Summary Judgment.

tory federal law, portions of its trains arriving in or departing from Mitchell have occupied and will continue at times to occupy grade crossings for periods of time in excess of ten minutes.

3. Over the time period relevant to this lawsuit, federally mandated regulations and procedures resulted in the occupation of crossings in Mitchell for periods longer than ten minutes at a time, including the following operations by CSXT:

a. The performance of federally mandated brake tests;

b. The operation of trains at federally mandated speed limits; and

c. The positioning of flagmen at certain crossings during train operations, consistent with internal rules that bind CSXT with the force of law pursuant to regulations of the Federal Railroad Administration ("FRA").

4. Prior to departures from CSXT's depot in Mitchell, CSXT trains are required to perform a series of federally mandated safety tests to determine that the pneumatic braking systems on those trains are functioning as designed. These federally mandated safety tests can be performed only after trains, including locomotives and all freight cars, have been fully assembled. CSXT performs air-brake tests because the U.S. Secretary of Transportation ("the Secretary"), acting through the FRA, has issued regulations mandating that pneumatic air-brake tests be performed by CSXT trains operating in Mitchell. Only after these tests are completed is a CSXT train crew operating in Mitchell authorized, under applicable federal regulations, to depart from the area. Air-brake tests necessarily result in the occupation of grade crossings in Mitchell while a given train's brakes are being checked. Notwithstanding the fact that CSXT is required by federal law to conduct these air-brake tests, city police officials duly authorized by Mitchell have cited CSXT for violations of Indiana Code § 8–6–7.5–1 ("Section 8–6–7.5–1") when occupation of crossings due to the air-brake tests has taken longer than ten minutes.

5. CSXT trains have also been cited by Mitchell police officers under Section 8–6–7.5–1 when operating at slow speeds at certain locations in Mitchell. Trains in this area travel at speeds as low as two (2) miles per hour in order to assure—consistent with federally mandated law—that the automatic warning devices at highway-rail crossings in this stretch of track are operational for at least twenty seconds before a given train occupies those crossings.

6. In addition to citing CSXT trains for violations under Section 8–6–7.5–1 when moving slowly, Mitchell police officers have also routinely included within the computation of the ten-minute obstruction threshold time periods during which those CSXT trains were physically moving through crossings in Mitchell.

7. Mitchell police officials have also, under the auspices of Section 8–6–7.5–1, issued tickets when delays of ten minutes or more result from the required movement of CSXT flagmen from one crossing to another in order to warn the public of a train's approach. Use of such flagmen is dictated by internal CSXT operating rules, which have the force of law under FRA regulations.

8. Mitchell's police chief, Morris W. Chastain ("Chief Chastain"), has himself personally ticketed CSXT trains on more than 100 occasions. Chief Chastain has represented that Section 8–6–7.5–1 is the only authority upon which Mitchell police officers cite CSXT trains.

9. Chief Chastain concedes that (a) there are no written guidelines or procedures for the enforcement of Section 8–6–7.5–1 by his officers, (b) he cannot recall having given any verbal instructions to officers acting under his authority in enforcing the statute, and (c) that, to the best of his recollection, none of his officers has ever sought direction or instruction regarding the manner or means of enforcing the statute.

10. Chief Chastain defines "blocking" as a situation in which a train is positioned

in a crossing so to prevent a person or vehicle from crossing over the tracks to get to the other side. He maintains that a train is "blocking the crossing" whether it is moving or not. Accordingly, as indicated above, citation of CSXT trains by Mitchell officials under the color of Section 8–6–7.5–1 occurs even when trains are physically moving on the tracks at some point during the course of the ten-minute obstruction threshold period applied by Mitchell officials using Section 8–6–7.5–1. For example, on one occasion in May 1997, Chief Chastain reportedly issued five citations for one CSXT train that came through Mitchell, and he does not dispute that, in the context of each of the five citations, the CSXT train was physically moving.

11. Furthermore, Chief Chastain has testified that he has no idea what CSXT crew members are required to do when they bring trains through the city, having no familiarity with what federal laws or federal regulations or corporate safety policies might require in terms of moving trains in and out of the city.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this litigation pursuant to 28 U.S.C. §§ 1331, 1337 and 1391. In addition, consistent with this court's broad discretion in tailoring appropriate remedies, as well as the averments set forth in CSXT's *Verified Complaint* herein, this court has the power to render declaratory relief under the provisions of 28 U.S.C. § 2201.

2. CSXT seeks a declaration that it is unlawful for Defendant, the City of Mitchell, to enforce the provisions of Section 8–6–7.5–1 against CSXT because Section 8–6–7.5–1, as applied, is preempted by the Federal Railroad Safety Authorization Act of 1994 ("the FRSA"), 49 U.S.C. § 20101, et seq. *See* Verif. Complt., at 7–8 (Demand, ¶ 1). Additionally, CSXT has requested—prospectively (from the filing date of its Complaint into the future)—that the Court permanently halt Mitchell's unconstitutional enforcement of Section 8–6–7.5–1. *See* Verif. Complt., ¶ 19.

3. The Indiana statute with which CSXT takes issue—Section 8–6–7.5–1—reads as follows:

It shall be unlawful for a railroad corporation to permit any train, railroad car or engine to obstruct public travel at a railroad-highway grade crossing for a period in excess of ten (10) minutes, except where such train, railroad car or engine cannot be moved by reason of circumstances over which the railroad corporation has no control.

4. CSXT is a "railroad" as that term is defined in the Federal Railroad Safety Authorization Act of 1993, 49 U.S.C. § 20101, et seq. and a "railroad corporation" as referenced in the above-quoted Indiana statute.

5. CSXT specifically seeks, among other things, to permanently halt Mitchell's unconstitutional enforcement of Section 8–6–7.5–1 (injunctive relief) and/or for a declaration that, as enforced by Mitchell, Mitchell officials are abrogating or contravening preemptive federal law. CSXT maintains that Mitchell's enforcement scheme under Section 8–6–7.5–1 is unconstitutional as being in direct contravention of the Supremacy Clause of the U.S. Constitution, as well as the principle of "federal preemption."

6. The FRSA was enacted by Congress in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *See* 49 U.S.C. § 20101; *see also CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 661, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (*quoting* 45 U.S.C. § 421, recodified in 1994 as 49 U.S.C. § 20101); *Reno v. Consolidated Rail Corp.,* 797 F.Supp. 700, 701–02 (S.D.Ind.1992) (Barker, D.J., presiding). Under the FRSA, the Secretary of Transportation is authorized to "prescribe regulations and issue orders for every area of railroad safety." *See* 49 U.S.C. § 20103. Pursuant to various statutes and regulations, the Federal Railroad Administration, a unit within the Department of Transportation, is charged with carrying out many

of the functions vested in the Secretary under the FRSA, including promulgating regulations under the FRSA. *See* 49 U.S.C. § 103; 49 C.F.R. § 1.3(b), (e); 49 C.F.R. § 1.49.

■ 7. The federal regulations promulgated by the Secretary of Transportation under the FRSA—as well as the greater and more convincing weight of case law construing the same—make clear that federal law has expressly occupied (and thus preempts any state law or any enforcement of state law inconsistent with) the following areas of train operations:

   a. The regulation of train speed. *See, e.g., CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 674–75, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (speed limits to be read as not only establishing ceiling, but also precluding additional state regulation; 49 C.F.R. § 213.9 "should be understood as covering the subject matter of train speed with respect to the track conditions, including the conditions posed by grade crossings"); *see also CSX Transp., Inc. v. City of Plymouth,* 86 F.3d 626, 629–30 (6th Cir.1996);

   b. The regulation of train length. *See, e.g., CSX Transp., Inc. v. City of Plymouth,* 86 F.3d 626, 629–30 (6th Cir.1996); *Consolidated Rail Corp. v. City of Bayonne,* 724 F.Supp. 320, 326–331;

   c. Regulation of trains in physical motion, even if otherwise obstructing a railroad crossing. *See, e.g., CSX Transp., Inc. v. City of Plymouth,* 86 F.3d 626, 629–30 (6th Cir.1996);

   d. Regulation of air-brake tests. *See* 49 C.F.R. §§ 232.12, 232.13; and

   e. Regulation of flagmen utilized via internal operating rules to direct rail traffic through crossing. *See* 49 C.F.R. §§ 217–18.

8. As determined above in the Court's *Findings of Fact,* Mitchell officials have issued citations to CSXT trains under the auspices of Section 8–6–7.5–1, even though such trains have engaged in the aforementioned activities, which are, as indicated, expressly (and solely) regulated by federal law.

■ 9. To the extent Mitchell's enforcement of Section 8–6–7.5–1 has the improper effect of thwarting and/or frustrating application of and compliance with this mandatory and supreme federal law, it is inconsistent with federal law, and we thus declare that said enforcement by Mitchell is preempted.

10. Prior to and during the pendency of this action, the City of Mitchell has had in place an inadequate enforcement scheme that makes no effort to discern the reasons for obstructions of its crossings by CSXT trains. Thus, to the extent this enforcement scheme fails to inquire about the circumstances of crossing obstructions by CSXT trains, and to the extent it fails to make an adequate investigation as to whether, in fact, CSXT trains are obstructing crossings for longer the ten minutes as a direct result of compliance with federal law, we declare that said enforcement is inconsistent with federal law.

11. In so declaring, the Court further concludes and declares that, because Mitchell has had in place during the entire pendency of this action an inadequate enforcement scheme that is inconsistent with mandatory federal law, all citations issued against CSXT by Mitchell officials during the pendency of this action for alleged violations of Section 8–6–7.5–1 are null and void.

12. Consistent with these declarations, the Court directs Mitchell, from the time of the issuance of this Judgment and thereafter, to require its law enforcement officials to undertake and complete, prior to the issuance of any citation under Section 8–6–7.5–1 to a train company or corporation (and/or any of its agents or employees) operating an allegedly obstructing train, an investigation into the circumstances surrounding an alleged obstruction of a rail crossing (or crossings) within its boundaries. Should the facts of such an investigation reveal that any such train is obstructing a crossing (or crossings) because (a) it is performing federally mandated air-brake tests, (b) it is operating at

federally mandated speed limits and/or physically moving at some point during the ten-minute obstruction threshold limit, and/or (c) it is waiting for the positioning of a flagman (or flagmen) at certain crossings during the train's operations, Mitchell is affirmatively prohibited from issuing any citation to that train company or corporation (and/or any of its agents or employees) under the terms of Section 8–6–7.5–1 (or any other allegedly applicable state or municipal law.) Stated otherwise, from the date of this Judgment and thereafter, the City of Mitchell is hereby affirmatively prohibited from issuing any citation to a train company or corporation under Section 8–6–7.5–1 unless it can first establish, after sufficient investigation, that the train allegedly obstructing a crossing (or crossings) in Mitchell is engaged in an activity other than the three operations specifically delineated in (a) through (c) above.

13. We do not enjoin entirely, however, the enforcement of Section 8–6–7.5–1 by Mitchell law enforcement officials in that we perceive situations that may occur in which that statute would warrant enforcement in a manner consistent with federal law, such as, for example, if, after attempting to discern the reasons for the obstruction of rail crossings by trains traveling through its confines, Mitchell officials conclude that the trains were obstructing crossings in excess of ten minute for reasons not attributable to compliance with mandatory federal law, any ensuing decision to effect enforcement of Section 8–6–7.5–1 would likely be consistent with federal law. Similarly, if compliance with federal law prompted the obstruction of a crossing in excess of ten minutes, any decision made to refrain from citing those trains with a violation of Section 8–6–7.5–1 under such circumstances would, in actuality, also be a valid enforcement of the statute consistent with federal law.

14. There being no material fact in controversy and the law being in favor of plaintiff, CSXT is entitled to summary judgment against the City of Mitchell, consistent with the above-explicated terms,

and the same shall enter by separate order.