

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 17, 2005

The Honorable Kerry Spears
Milam County and District Attorney
The Blake Building
204 North Central
Cameron, Texas 76520

Opinion No. GA-0331

Re: Whether federal law preempts Transportation Code section 471.007, which imposes a criminal penalty against a railway company if its train blocks a railroad crossing for more than ten minutes (RQ-0299-GA)

Dear Ms. Spears:

You ask whether federal law preempts section 471.007 of the Transportation Code, which imposes a criminal penalty against a railway company if its train blocks a railroad crossing for more than ten minutes. *See* TEX. TRANSP. CODE ANN. § 471.007 (Vernon Supp. 2004-05).[1] In particular, you ask about the federal Interstate Commerce Commission Termination Act of 1995 (ICCTA), the Federal Railroad Safety Act (FRSA), and the Commerce Clause of the United States Constitution. *See* Brief, *supra* note 1, at 1. You submit this query not only on your own behalf but also on behalf of the county attorneys of Williamson County and Maverick County. *See* Request Letter, *supra* note 1, at 1.

### I.  The State Statute and its Enforcement

Section 471.007 of the Transportation Code provides that "[a] railway company commits an offense if a train of the railway company obstructs for more than 10 minutes a street, railroad crossing, or public highway." TEX. TRANSP. CODE ANN. § 471.007(a) (Vernon Supp. 2004-05). It requires a peace officer charging a railway company for an offense to "prepare in duplicate a citation to appear in court and attach one copy of the citation to the train or deliver the copy to an employee or other agent of the railway company." *Id.* § 471.007(c).[2] "The hearing must be before a magistrate who has jurisdiction of the offense in the municipality or county in which the offense is alleged to have been committed." *Id.* § 471.007(e). It is a defense to prosecution under section 471.007 that

---

[1]*See* Letter and Brief (Exhibit "D") from Honorable Kerry Spears, Milam County and District Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 7, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Brief respectively].

[2]Section 471.007(c) further states that "[t]he citation must show: (1) the name of the railway company; (2) the offense charged; and (3) the time and place that a representative of the railway company is to appear in court." TEX. TRANSP. CODE ANN. § 471.007(c) (Vernon Supp. 2004-05).

the train obstructed "the street, railroad crossing, or public highway because of an act of God or breakdown of the train." *Id.* § 471.007(d). An offense under section 471.007 is a misdemeanor punishable by a fine of not less than $100 or more than $300. *See id.* § 471.007(b).

You explain that in the past few years Milam County law enforcement officers have issued numerous citations to railway companies for obstructing a railroad crossing. *See* Request Letter, *supra* note 1, at 1. The railway companies have responded to prosecutions of the citations by filing motions to quash based on preemption of the state statute by federal law. *See id.* The courts in your county before which the citations are pending have issued orders holding the cases in abeyance while your office obtains an attorney general opinion on whether federal law preempts section 471.007.[3]

## II.     Analysis: Whether Federal Law Preempts the State Statute

Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. If a state law conflicts with federal law, it is preempted and has no effect. *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981); *Am. Cyanamid Co. v. Geye*, 79 S.W.3d 21, 23 (Tex. 2002).

There are three ways that a federal statute may preempt a state law. *See Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001). First, "[a] federal law may expressly preempt state law." *Id.* (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). Second, "federal law or regulations may impliedly preempt state law or regulations if the statute's scope indicates that Congress intended federal law or regulations to occupy the field exclusively." *Id.* (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). Finally, state law is also impliedly preempted if it actually conflicts with federal law or regulations, because "(1) it is impossible for a private party to comply with both state and federal requirements; or (2) state law obstructs accomplishing and executing Congress' full purposes and objectives." *Id.* (citations omitted).

### A.     The Interstate Commerce Commission Termination Act of 1995

The ICCTA, which became effective on January 1, 1996, abolished the Interstate Commerce Commission and created the Surface Transportation Board ("STB"). Section 10501(b) of the ICCTA provides that jurisdiction of the STB over

> (1)  transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

> (2)  the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or

---

[3]*See* Letter from Dan Cervenka, Assistant Milam County and District Attorney, to Nancy S. Fuller, Chair, Opinion Committee, Office of Attorney General (Feb. 28, 2005) (on file with Opinion Committee).

facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. *Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.*

49 U.S.C. § 10501(b) (2000) (emphasis added).

The United States Court of Appeals for the Fifth Circuit recently concluded on the basis of this language that the ICCTA expressly preempted section 471.007 of the Transportation Code. *See Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 444 (5th Cir. 2001). In that case, business owners sued a railway company for blocking the road to their nursery alleging negligence and negligence per se. *See id.* at 441. The district court had denied the railway company's motion for summary judgment, which contended that the ICCTA preempted the plaintiffs' claims. *See id.* At the time of the events at issue, section 471.007 had prohibited railroad officers, agents, servants or receivers from wilfully allowing a standing train to obstruct a crossing for more than five minutes. *See id.* at 441 n.2. The Texas Legislature amended section 471.007 to its present form, extending the time limit to ten minutes and deleting the "'standing train' limitation," in 1999. *See id.*; *see also* Act of May 26, 1999, 76th Leg., R.S., ch. 1023, § 1, 1999 Tex. Gen. Laws 3812 (amending section 471.007).

The *Friberg* court stated that the ICCTA's premption provision, *see* 49 U.S.C. § 10501(b) (2000), "could not be more precise, and it is beyond peradventure that regulation of . . . train operations, as well as the construction and operation of . . . side tracks, is under the exclusive jurisdiction of the STB unless some other provision in the ICCTA provides otherwise." *Friberg*, 267 F.3d at 443. Noting that "[n]othing in the ICCTA otherwise provides authority for a state to impose operating limitations on a railroad like those imposed by the Texas Anti-Blocking Statute," the court held that "the Texas Anti-Blocking Statute . . . [is] preempted by the ICCTA." *Id.* at 444.

A brief submitted with your request notes that the Fifth Circuit stated in a footnote that it did not decide "what impact the ICCTA would have upon a state provision pertaining strictly to such traditionally state-controlled safety issues as local law enforcement and emergency vehicle access." *Id.* at 444 n.18.[4] But *Friberg* clearly holds that the ICCTA preempts the state statute as well as the plaintiffs' claims. *See id.* at 444. Contrary to the brief's assertion, the footnoted aside is not a suggestion that section 471.007, if applied only in circumstances involving law enforcement and emergency vehicle access, would not be preempted. Rather, the aside acknowledges the possibility that the Texas Legislature might be able to craft a statute regulating blocking to the extent it interferes with state and local law enforcement or emergency response that is not preempted. But such a statute has not been enacted. Moreover, though the Texas Legislature amended section

---

[4]*See* Brief, *supra* note 1, at 2 ("The Fifth Circuit states that if an issue between the Texas Anti-Blocking statute and safety arises, preemption of state law under the ICCTA may be decided differently.").

471.007 in 1999, the current statute now prohibits blocking under any circumstances, except when proven to be due to "an act of God or breakdown of the train."[5] Indeed, the current statute, which prohibits blocking by a standing or moving train, criminalizes a broader range of railroad operations. In its present state, the statute may not be said to "pertain[] strictly to such traditionally state-controlled safety issues as local law enforcement and emergency vehicle access." *Id.* at 444 n.18.

The brief also suggests that the *Friberg* case, which considered the Texas statute in the context of common-law negligence claims, is distinguishable and would not apply in the criminal enforcement context because the court's ultimate holding was based on the concern that the plaintiffs' state law claims imposed economic regulation.[6] However, the court expressly stated that criminal enforcement of the statute would amount to economic regulation:

> We cannot accept the trial court's reasoning that the Texas Anti-Blocking Statute is a criminal provision that does not reach into the area of economic regulation of railroads. Regulating the time a train can occupy a rail crossing impacts, in such areas as train speed, length and scheduling, the way a railroad operates its trains, with concomitant economic ramifications that are not obviated or lessened merely because the provision carries a criminal penalty.

*Id.* at 443.

Moreover, a Michigan federal district court held that the ICCTA preempted the criminal enforcement of a similar anti-blocking statute[7] on the basis that the statute's enforcement would impose an economic burden. *See CSX Transp., Inc. v. City of Plymouth*, 92 F. Supp. 2d 643, 655 (E.D. Mich. 2000). After receiving numerous citations for violating the law, a railroad company filed an action seeking a declaratory judgment that the Michigan statute prohibiting a railroad from blocking vehicular traffic at an intersection for longer than five minutes was preempted by the FRSA, the ICCTA, and the Commerce Clause. *See id.* at 645. With respect to the ICCTA, the federal court concluded that

---

[5]TEX. TRANSP. CODE ANN. § 471.007(d) (Vernon Supp. 2004-05) (providing a defense to prosecution).

[6]*See* Brief, *supra* note 1, at 2-3.

[7]The statute at issued provided:

(1) A railroad shall not permit a train to obstruct vehicular traffic on a public street or highway for longer than 5 minutes at any 1 time, except the obstruction shall not be considered a violation under the following circumstances:

    (a) If the train is continuously moving in the same direction at not less than 10 miles per hour for not longer than 7 minutes.

    (b) If the railroad can show that the incident occurred as a result of a verifiable accident, mechanical failure, or unsafe condition.

*CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812, 817 (6th Cir. 2002).

> the statute could also be fairly characterized as requiring the railroad to make substantial capital improvements to upgrade its class of track or relocate its yards. Viewed in this way, the law does not affect speed, length, or air brake tests, but rather requires the railroad to undergo substantial renovations at the state's command. To the extent the state law is viewed as having the effect of requiring the railroad to undergo substantial capital improvements, the Court finds that the law is preempted [by the ICCTA].

*Id.* at 658. The court ultimately concluded that any limitation on the time that a train may block a crossing must come from the federal government and granted the railroad's motion for summary judgment. *See id.* at 663.

Based on the Fifth Circuit's very broad holding in *Friberg* and the district court's reasoning in *Plymouth*, a criminal enforcement case, we have no doubt that a court would conclude that the ICCTA preempts the criminal enforcement of section 471.007. While we believe that the Fifth Circuit's holding is dispositive, we also consider whether the FRSA preempts section 471.007, given your apparent concern that *Friberg* arose in the civil context and addressed a slightly different version of the statute.

### B.      The Federal Railroad Safety Act

Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101 (2000). The FRSA gives the Secretary of Transportation the power to "prescribe regulations and issue orders for every area of railroad safety." *Id.* § 20103(a). In order to promote the national uniformity of railroad regulation, Congress included an express preemption provision. The FRSA provides in pertinent part:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
>
> (1) is necessary to eliminate or reduce an essentially local safety or security hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

*Id.* § 20106.

Applying this language, the Michigan federal district court in *Plymouth* concluded that the FRSA expressly preempted the Michigan anti-blocking statute. *See Plymouth*, 92 F. Supp. 2d at 649-58. The United States Court of Appeals for the Sixth Circuit subsequently upheld the district court's holding. *See CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812 (6th Cir. 2002).[8] As the Sixth Circuit explained, 49 U.S.C. § 20106

permits state regulation related to railroad safety only if:

(1) the Secretary of Transportation has not yet regulated the subject matter of the state regulation (the first savings clause), or

(2) the regulation (a) is necessary to eliminate an essentially local hazard, (b) does not conflict with federal law, and

. (c) does not unreasonably burden interstate commerce (the second savings clause).

*Id.* at 815.

With respect to the second savings clause, the district court had held that because the Michigan law is applicable to the entire state, the statute is not concerned with "eliminat[ing] an essentially local hazard," and the parties did not appeal that holding. *See id.* at 815. However, the parties did appeal the district court's holding with respect to the first savings clause that the state law regulated conduct already regulated by federal law. Noting that "the amount of time a moving train spends at a grade crossing is mathematically a function of the length of the train and the speed at which the train is traveling," the Sixth Circuit agreed with the district court that the Michigan statute would require the railroad "to modify either the speed at which its trains travel or their length, and would also restrict [its] performance of federally mandated air brake tests." *Id.* at 817. The court continued:

To the extent that the Michigan statute would force CSXT to modify the length of its trains, the Supreme Court long ago held that

---

[8]Given its conclusion that the statute was preempted by the FRSA, the Sixth Circuit did not consider whether the statute was preempted by the ICCTA. *See Plymouth*, 283 F.3d at 817 ("Because we have concluded that the district court did not err in holding that the Michigan statute is preempted by the FRSA, we decline to address the question of whether the state law is also preempted by the ICCTA.").

> state regulation of train length violates the Commerce Clause. *S. Pac. Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) (holding that the safety benefits of limiting the length of trains is outweighed by the resultant burden upon interstate commerce); *see also R.J. Corman R.R. Co. v. Palmore*, 999 F.2d 149, 153 (6th Cir. 1993) (holding that a state statute can be preempted by a federal statute even if there is no federal regulation directly addressing the subject matter of the state statute). There are also numerous federal regulations that cover the speed at which trains may travel and the stops that trains must make to test their air brakes. The Supreme Court, for example, has held that the speed limits set by 49 C.F.R. § 213.9 "should be understood as covering the subject matter of train speed with respect to the track conditions, *including the conditions posed by grade crossings*." *Easterwood*, 507 U.S. at 675 (emphasis added). These federal regulations thus "substantially subsume the subject matter of the relevant state law." *Id.* at 664.

*Id.* The court concluded that "because the Secretary of Transportation has already prescribed regulations covering the subject matter of the state statute, the first savings clause of the FRSA's express preemption provision does not apply to the Michigan statute," and affirmed the district court's holding that the Michigan statute is preempted by the FRSA. *Id.*

In addition, several courts have concluded that FRSA preempts local ordinances prohibiting or regulating blocking and have enjoined their enforcement or dismissed citations for their violation.[9]

---

[9]*See CSX Transp., Inc. v. City of Plymouth*, 86 F.3d 626, 630 (6th Cir. 1996) (holding that the FRSA preempted a city ordinance that imposed a five minute blocking limit) (affirming district court order permanently enjoining ordinance's enforcement); *Norfolk & W. Ry. Co. v. City of Oregon*, No. 3:96CV7695 (N.D. Ohio May 26, 1997) (unpublished), *aff'd*, 210 F.3d 372 (6th Cir. 2000) (unpublished) (affirming district court order permanently enjoining city from enforcing municipal anti-blocking ordinance); *City of Seattle v. Burlington N. R.R. Co.*, 41 P.3d 1169, 1174 (Wa. 2002) (holding that the FRSA preempted city ordinances regulating street blockages for periods over four minutes because they affected "the speed at which trains travel, train length, and trains in physical motion," areas regulated by the FRSA) (affirming appellate court decision dismissing citations); *see also Rotter v. Union Pac. R.R. Co.*, 4 F. Supp. 2d 872, 874 (E.D. Mo. 1998) (holding that the FRSA preempted a municipal ordinance prohibiting a railroad from blocking a crossing for more than five minutes) (dismissing plaintiff's claim that railroad was negligent per se because it violated a municipal ordinance by blocking street crossing for more than five minutes).

A federal district court in Indiana determined that the FRSA preempts an Indiana statute making it unlawful for a railroad corporation to obstruct public travel at a railroad crossing for more than ten minutes. *See CSX Transp., Inc. v. City of Mitchell*, 105 F. Supp. 2d 949, 951-52 (S.D. Ind. 1999). However, the district court's order permitted officials to enforce the statute if they first established that the blocking did not occur due to an operation required by federal law. *See id.* at 952-53. Only one other court has cited this case, and it did so only for the proposition that an anti-blocking provision conflicts with federal law and is preempted by the FRSA. *See Burlington N. R.R. Co.*, 41 P.3d at 1174. We are not aware of any other case considering an anti-blocking statute or ordinance that has held the provision preempted and also permitted enforcement.

Two attorney general opinions from other states have also concluded that the FRSA preempts local anti-blocking provisions.[10]

Like the Michigan statute, the Texas statute prohibiting blocking for more than ten minutes necessarily regulates train speed and length, matters regulated by federal law. *See id.* Based on the Sixth Circuit's analysis in the *Plymouth* case and the other cases addressing anti-blocking ordinances, we believe a court considering the Texas statute would conclude that it is preempted by the FRSA.

Because we believe a court would conclude that both the ICCTA and the FRSA preempt section 471.007, we need not reach the constitutional question regarding whether section 471.007 violates the Commerce Clause. *See, e.g., Friberg*, 267 F.3d at 444 n.18 ("Because of today's holding we need not and do not decide whether the Fribergs' claims are also preempted by . . . the Commerce Clause . . . ."); *Plymouth*, 86 F.3d at 630 ("In light of CSXT's entitlement to judgment based on FRSA preemption, we need not rule on CSXT's Commerce Clause and discriminatory taxation claims.").

---

[10]*See* Op. Kan. Att'y Gen. 2000-65 (2000) at 3 (advising that "local legislation that imposes time restrictions on trains obstructing traffic . . . may be preempted by the [FRSA]"); Op. La. Att'y Gen. 96-228A (1997) at 3 (concluding that a "parish ordinance attempting to limit blocking public roads is 'related to railroad safety' and this is expressly preempted by the FRSA").

## S U M M A R Y

Section 471.007 of the Transportation Code, which imposes a criminal penalty against a railway company if its train blocks a railroad crossing for more than ten minutes, is preempted by the federal Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee